Argued March 14, modified March 27, 1928.

# R. H. RANDOLPH v. C. CHRISTENSEN ET AL.

(265 Pac. 797.)

**Mechanics' Liens—Complaint in Suit to Establish and Foreclose Mechanic's Lien Held to Sufficiently Disclose That Lien was Filed Within Statutory Period.**

1. Complaint in suit to establish and foreclose mechanic's lien, as amplified by lien notice and contract for repairs made part of complaint by express reference, *held*, in absence of a motion or demurrer, to sufficiently disclose that lien was filed within statutory period.

**Mechanics' Liens—Variance in Suit to Foreclose Mechanic's Lien Between Allegations and Proof of Ownership of Property Held Immaterial Where Defendant was not Misled (Or. L., §§ 97, 99).**

2. Where complaint in suit to establish and foreclose mechanic's lien alleged that one in possession was owner while evidence showed that certain others were owners, *held*, that, under Sections 97, 99, Or. L., where defendant denied that one in possession is owner and alleged that such others were owners, defendant was not misled by variance, and hence question was not as to whether variance occurred, but whether there was a total failure of proof.

Mechanics' Liens—Use by Workmen of Their Tools of Trade cannot be Set Up as Ground for Defeating Mechanic's Lien.

3. Mechanic's lien cannot be defeated because workmen facilitated their labor and promoted their skill through use of their tools of trade.

Mechanics' Liens—Five Days' Notice is Required Only of Materialmen not Receiving Requisitions from Owner or His Commonlaw Agent (Or. L., § 10191).

4. The five days' notice provided for by Section 10191, Or. L., to subject property to mechanic's lien is required only of materialmen who do not receive their requisitions from the owner or from his common-law agent.

Mechanics' Liens—Where Materialmen Dealt With Vendee in Possession, Statutory Notice was not Required to Subject His Limited Ownership to Mechanic's Lien—"Owner" (Or. L., § 10191).

5. Vendee in possession with whom materialman who was also original contractor dealt is an "owner," within rule that five days' notice provided for by Section 10191, Or. L., is required only of materialmen not receiving requisitions from owner, and hence no notice was required to subject such vendee's limited ownership to contractor's mechanic's lien.

Mechanics' Liens—Interest of Legal Owner, Knowing of Repairs and Improvements and not Remonstrating nor Posting Notice of Nonliability, is Subject to Mechanic's Lien (Or. L., § 10194).

6. Where legal owner of premises knew that improvements and repairs were being made and neither remonstrated nor posted notices of nonliability, as provided for by Section 10194, Or. L., his interest was subjected to mechanic's lien.

Mechanics' Liens—Persons Selling Property Under Installment Purchase Contract Held in Nature of Mortgagees to Whom Statutory Notice by Materialmen was not Required as Condition Precedent to Mechanic's Lien (Or. L., § 10191).

7. Persons to whom installment purchase contract was assigned, and who thereafter sold property to another under new installment contract, retained legal title in premises to secure themselves ultimate payment of purchase money and were in nature of mortgagees to whom five days' notice provided by Section 10191, Or. L., was not required to be sent by materialmen as condition precedent to mechanic's lien.

---

6. Statutes giving lien where owner with knowledge of the improvement fails to give notice of nonliability, see notes in 23 L. R. A. (N. S.) 618; L. R. A. 1917D, 584. Mechanic's lien on realty for improvements with consent but not at expense of owner of realty, see notes in 11 Ann. Cas. 1082; 19 Ann. Cas. 734; Ann. Cas. 1916C, 1133; Ann. Cas. 1918C, 1019. See, also, 18 R. C. L. 907. Knowledge of owner of improvements or repairs intended or in process under orders of vendee as "consent" which will subject his interest to mechanic's lien, see note in 4 A. L. R. 685.

Mechanics' Liens—Unrecorded Equitable Lien of Vendor Under Contract for Sale Held Subsequent to Mechanic's Lien (Or. L., § 10193).

8. Where equitable lien of vendors under contract of sale was unrecorded, under Section 10193, Or. L., it became subsequent to mechanic's lien.

Mechanics' Liens—Interest of Vendor Under Contract of Sale Held Subject Only to Reasonable Value of Material and Services Rendered Pursuant to Contract With Vendee in Possession.

9. Where improvement of building was made pursuant to contract with vendee in possession, interest of vendor under contract for sale can be subjected only to reasonable value of the material and services rendered.

Appeal and Error—Defendant Agreeing That Court Fix Attorney's Fees cannot Complain on Appeal of Failure to Receive Evidence on Question.

10. Defendants, having agreed that court fixed attorney's fees, cannot complain on appeal of failure to take evidence on question, since presiding judge is as competent to determine what is fair compensation for attorneys as an attorney witness to whom a hypothetical question is propounded.

Mechanics' Liens, 40 C. J., p. 79, n. 71, p. 91, n. 34, p. 125, n. 3, p. 126, n. 14, p. 127, n. 43, p. 163, n. 7, p. 165, n. 41, p. 521, n. 12. Pleading, 31 Cyc., p. 714, n. 49.

From Multnomah: L. P. HEWITT, Judge.

Department 1.

MODIFIED.

For appellants there was a brief and oral argument by *Mr. John F. Cahalin.*

For respondent there was a brief and oral arguments by *Mr. James W. Crawford* and *Mr. W. C. Campbell.*

ROSSMAN, J.—This is a suit to establish and foreclose a mechanic's lien. November 25, 1924, the plaintiff, a building contractor, and the defendant Christensen, entered into a contract whereby the former undertook to make some repairs and improve-

ments upon a dwelling-house. The contract price was the sum of $1,274.33. There is no dispute in the evidence of the contention that this contract was entered into, that work was done, and that its result was of benefit. The principal issue is whether the interest of the defendants H. A. and Clara Sabbe is subject to the plaintiff's lien. In the lower court the plaintiff secured a decree for the relief he sought. The defendants Sabbes appeal.

The record establishes that March 25, 1925, Charles H. and Esther Stevens owned this property. May 18, 1919, they entered into a contract with one Hedrick, by which the latter undertook to purchase it. The contract stipulated that the purchase price was payable in installments. Before the full purchase price had been paid, Hedrick assigned his rights under this contract to the defendants Sabbes. June 5, 1925, the Sabbes and one Mahlon J. Simpson entered into a contract by the terms of which the Sabbes undertook to sell and Simpson agreed to purchase this property. This contract stipulated that the purchase price was payable in installments. September 27, 1924, Simpson assigned this contract to Carl R. and Mary P. McFadden. Two days later the McFaddens entered into a contract with the defendant Christensen, by virtue of which he undertook to purchase this property from the McFaddens for the sum of $2,800 in installment payments. Christensen made an initial payment of $200 the balance of $2,600 was payable at the rate of $35 a month. None of these three contracts found its way into the public records. When the plaintiff entered into his contract with Christensen, he was possessed of no knowledge that the Sabbes claimed an interest in this property. At that

time there was due Stevens only $100 upon the original installment contract. Further facts we shall set forth in our findings in connection with the various assignments of error.

1. The defendants contend that the complaint fails to disclose that the lien was filed within the statutory period. The complaint alleges: "Said work was completed on or about March 2, 1925. * * That said lien was so executed as to entitle the same to be recorded and the same was on the 28th day of April, 1925, duly recorded in * * ." Defendants contend that the foregoing fails to allege definitely that the lien notice was filed within sixty days after the work was completed; their contention is based upon the proposition that the statement of the completion of plaintiff's work is unaccompanied by an averment of a precise day. The lien notice which was made a part of the complaint by appropriate reference, contains this recital: "Said materials were furnished and said labor was performed between the dates of 27th day of November, 1924 and 2nd day of March, 1925"; also, "sixty days have not elapsed since the completion of said building." In the lien notice we find this statement of the account:

"Mr. C. Christensen, in account with R. H.
    Randolph, Mar. 2, 1925, to amount of
    contract .........................$1274.33
 Payments made at various times during
    the performance of the work aggregat-
    ing ...............................  350.00

Balance unpaid and due................$924.33."

The contract between plaintiff and Christensen is made a part of the complaint by an appropriate reference; it contains this indorsement: "Last work was

done and job completed on the 2nd day of March, 1925. C. Christensen, owner, witness Lillie V. Randolph." The loose expression contained in the body of the complaint is thus amplified and made certain by the exhibits accompanying the pleading and made a part of it by express reference. In the absence of a motion or demurrer the complaint was sufficient.

2. It is contended by the defendant that since the complaint alleges that Christensen was the owner and reputed owner of the premises when he entered into the contract for the plaintiff's services, and the evidence showed that Stevens was possessed of the legal title, there was a fatal variance between the proof and the allegations. However, the answer denied that Christensen was the owner, and alleged that the Stevens were the owners. The lien notice which accompanied the complaint as an exhibit recited that at the beginning of the work Christensen was the owner or reputed owner of the building; that the Stevens were at that time the owners of the land and "now H. A. and Clara Sabbe are the owners and had knowledge of said work being done."

Section 97, Or. L., provides:

"No variance between the allegation in the pleading and the proof shall be deemed material, unless it have actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it shall be alleged that a party has been so misled, that fact shall be proved to the satisfaction of the court, and in what respect he has been misled; and thereupon the court may order the pleading to be amended upon such terms as shall be just."

Section 99 provides:

"When, however, the allegation of the cause of action or defense to which the proof is directed is

unproved, not in some particular or particulars only, but in its entire scope and meaning, it shall not be deemed a case of variance within the two last sections, but a failure of proof.''

Accordingly, in this suit, we are confronted with the problem not as to whether a variance has occurred, but whether there has been a total failure of proof. In view of the denial and allegations of the answer it is evident that the defendant was not misled.

We are of the opinion that there was not such a failure of proof that a recovery should be denied the plaintiff.

3. It is sought to defeat the lien on the contention that the plaintiff has included within the lump sum he set forth in his lien notice, a nonlienable item, to wit, the use of tools. We fail to find in the lien notice the word ''tools''; however, plaintiff's contract required him ''to furnish all materials, tools and labor.'' Since the plaintiff seeks to recover the full contract price, the defendants perhaps conclude that a portion of the $1,274.33 must represent the cost of the use of tools. We do not understand that the plaintiff used any unusual tools, or seeks to recover for their transportation, as is mentioned in *Allen* v. *Elwert,* 29 Or. 428 (44 Pac. 824, 48 Pac. 54). Almost every mechanic brings with him a kit of tools; usually the use of those common tools ordinarily used by workmen in pursuing their trades do not become a separate, distinct charge in the daily wage, or of the contract price. We know of no court which has defeated a lien because the workmen have facilitated their labor and promoted their skill through the use of such common tools. See 40 C. J., p. 79.

4. It is next claimed that the plaintiff is not entitled to a lien because he did not deliver the five days' notice provided for by Section 10191, Or. L., to these defendants. The five days' notice is required only of materialmen who do not receive their requisitions from the owner, or from his common-law agent: *Nicolai-Neppach Co.* v. *Poore,* 120 Or. 163 (251 Pac. 268); *Johnson* v. *Alm,* 121 Or. 285 (254 Pac. 803); *Schram* v. *Manary* (Or.), 260 Pac. 214. In the latter case the materialmen whose claims were subjected to the five days' notice had not received their contracts from Manary. The abstract of record discloses that the notices of nonliability posted by Manary were in place before the materialmen commenced their deliveries; hence, the materialmen were aware of the true owner whose interests the five-day notice undertakes to protect.

5, 6. The plaintiff was the original contractor and was dealing with one Christensen, the vendee in possession, who was an ''owner'' within the definition of that term as stated in *Schram* v. *Manary, supra.* Therefore to subject Christensen's limited ownership in the premises to plaintiff's lien, no notice was required. Stevens was aware of the fact that improvements and repairs were being made upon the premises; he was present almost from the beginning of the work, was informed fully as to the contemplated improvements, and neither remonstrated nor posted notices of nonliability as provided for by Section 10194, Or. L.; hence, his interest was subjected to the plaintiff's lien. Thus a lien came into being and subjected to itself the interest of both the vendee in possession, as well as the original vendor. The problem is, did it possess sufficient potency to dominate

the interest of the defendants Sabbes? A further statement of the facts will now be helpful. The record title was vested in the name of Stevens; the Sabbes were assignees of the contract between the Stevens and Hedrick; this contract was not recorded. When the Sabbes contracted with Simpson in regard to this place, the Hedrick contract was not assigned to Simpson; the Sabbes retained it and Simpson and the Sabbes executed a new one. Later Simpson assigned his rights under this contract to the McFaddens. This contract likewise was not recorded. By no means improving the situation, the circumstance now occurred that the Sabbes lost the physical document comprising their contract. Next the McFaddens undertook to sell the property to Christensen; again, a new contract was executed. These contracts were left for collection with the Montaville Savings Bank. Finally when Stevens had received his full purchase price, he was not aware of whom was entitled to the deed, and supposing Christensen, the vendee in possession, was the proper party, tendered the deed to Christensen. Finally the deed reached the Sabbes. We recite these facts for the purpose of showing the difficulties which would have confronted the plaintiff if the law required him to notify the Sabbes.

7. To us it seems that our problem will be solved if we determine the true nature of the Sabbes' relationship to the various parties, together with the nature of their legal interest. They were not entitled to possession when the plaintiff commenced his construction operations, because the Simpsons, Mc-Faddens and Christensens were not in default; they parted with their right to possession when they sold

the property to Simpson. Having made the sale, they become entitled to receive the price stipulated in their contract. When they received the full sale price, all of their interest in the property would terminate. Until that time, the Sabbes retained the legal title to secure themselves the ultimate payment of the purchase money. Their relationship with the property was somewhat akin to the holder of a mortgage. The five-day notice need not be sent to a mortgagee. In *Pinkerton* v. *LeBeau*, 33 S. D. 440 (54 N. W. 97), a situation somewhat similar to that before us is commented upon in these words:

"At the time LeBeau contracted for the material for the building, he had an equitable title to the land, and Haft had an equitable mortgage upon the property, and held the legal title as security for its payment; * * *"

Thus the equity which the Sabbes secured when Hedrick assigned his installment purchase contract to them, they held thereafter merely as security for the unpaid purchase price when they entered into the contract of sale with Simpson. This court, speaking through Mr. Justice BEAN, in *Security Savings Co.* v. *MacKenzie*, 33 Or. 209 (52 Pac. 1046), said:

" * * Under an agreement for the sale of land, the vendor has, under the doctrine of equitable conversion, a so-called 'equitable lien' upon the property for the unpaid purchase money; and courts of equity have always exercised jurisdiction in the case arising under such contracts to enforce such lien and foreclose the rights of the delinquent vendee."

The principle is so well established we deem it unnecessary to cite any further authorities; the same doctrine has been many times announced by this court.

8. Section 10193, Or. L., provides:

"A lien created by this act upon any parcel of land shall be preferred * * to any lien, mortgage, or other incumbrance which was unrecorded at the time when said building, structure, or other improvement was commenced, or other materials for the same were commenced to be furnished and placed upon or adjacent to the land; * * "

Since the encumbrances evidenced by the contract held by the Sabbes was unrecorded, its lien became subsequent to the lien held by the plaintiff.

9. Plaintiff's contract stipulated that he should be paid the sum of $1,274.33. Payments on account reduced this sum to the amount of $924.33. However, the plaintiff cannot subject the property of the Sabbes to an amount which neither they nor their common-law agent agreed to pay; their interest in the property can be subjected to the reasonable value of the material and services rendered: *Christman* v. *Salway,* 103 Or. 666 (205 Pac. 541). The plaintiff offered no evidence of the reasonable value of the services and material supplied by himself, but there was reliable evidence to the effect that $795 represented the reasonable value of the labor and materials. Evidence to the effect that some of the installations put upon the property by the plaintiff were misplaced, and that some floor joists had no bearing upon the sills, and were therefore of slight if any value, perhaps accounts for the difference between the contract price and the reasonable value. We believe that the plaintiff should have a lien upon the interest of the Sabbes for no more than $795.

10. The lower court allowed the plaintiff $125 as compensation for the plaintiff's attorney. Before fixing the fee, plaintiff's counsel had stated: "We are perfectly willing that your Honor fix the attorney's

fee in this case in the decree"; to which opposing counsel replied: "That is satisfactory to me, if there be any; I am not conceding there is any; we will waive the proof of that." Defendant relies upon the *Columbia River Door Co.* v. *Todd,* 90 Or. 147 (175 Pac. 443, 860). However, in *Olson* v. *Boling,* 120 Or. 554 (252 Pac. 961), this court speaking through Mr. Justice Coshow said:

"Having stipulated that the court could fix the fee without taking testimony, the defendants are in no position to claim upon appeal that no evidence was taken. The judge doubtless was competent to fix the fee. He would have been a competent witness for that purpose. He was not obliged to fix the fee without evidence, but that was a matter resting in his discretion."

The presiding judge, who has become acquainted with the pleadings, and has observed the labor and skill bestowed upon the case through the services of the attorneys, is as competent to determine what is fair compensation for the attorneys as an attorney-witness to whom a hypothetical question is propounded. The observations made by the presiding judge in the course of a trial is evidence; the stenographer's notes preserve that evidence for our review in the event error is claimed. The answer to the hypothetical question made by the attorney-witness who is generally selected because he happens to be conveniently present in the courtroom, rarely adds anything to the sum total of knowledge.

The decree of the lower court will be modified so that the plaintiff may recover $795, less $350, which has been paid on account, plus the attorney's fee of $125; costs to the plaintiff. Modified.

RAND, C. J., and COSHOW and McBRIDE, JJ., concur.