MARK A. MAYER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78980.   Promulgated June 15, 1937.

*Herbert L. Swett, Esq.*, for the petitioner.
*Clay C. Holmes, Esq.*, for the respondent.

**118**

DISNEY: The respondent has determined a deficiency of $311.05 against the petitioner for 1932. The question is whether the net loss of Fleischner, Mayer & Co., a partnership of which the petitioner was a member, should include income and deductions of the Northwest Real Estate & Investment Co., a corporation. The facts were stipulated.

The partnership, formed many years prior to 1897 and having its principal business in Portland, Oregon, owned the premises upon which its office and warehouse were located, and other real estate which it acquired in settlement of accounts and notes receivable. In 1897 the partnership organized the Northwest Real Estate & Investment Co. under the laws of Oregon, and transferred to the corporation all of the real property then owned by it. Thereafter the partnership acquired no real estate in its own name, and whenever it settled accounts with customers in exchange for real estate or acquired real property for the needs of its business, title was taken in the name of the corporation. Any money necessary to acquire the property was supplied by the partnership. The partnership has at all times owned all of the stock of the corporation except qualifying shares outstanding in the names of the managing partners, which were beneficially owned by the partnership.

The corporation transacted no business of any kind and was at all times a holding company. It never owned any real estate other than parcels acquired in the manner set forth above. The corporation did not keep books of account, and has not at any time had an office, employees, agents, or a bank account. Items of income from its real estate were entered in the books and deposited in the bank account of the partnership and treated the same as other income of the partnership. Expenses relating to the property were paid by, and proceeds of sales were paid to, the partnership. Separate accounts were kept in the books of the partnership for each item of real estate held by the corporation. The partnership dealt with the property the same as it did with assets to which it had legal title.

The purpose of forming and continuing the existence of the corporation was for the convenience of the partnership in handling the property, including conveying title, and avoidance of title complications in the event of death of a partner.

The information returns of the partnership included the income and expenses of the corporation the same as if the real estate were owned by it. This fact was explained in each income tax return filed by the corporation, commencing in 1920, by notations attached thereto reading substantially as follows:

The Northwest Real Estate & Investment Company is a corporation whose stock is owned exclusively by the partnership of Fleischner, Mayer & Co. and it acts only as a holding company for the real estate belonging to that firm. It does not deal in real estate. The corporation does not keep books of its own. All of its transactions are recorded in the books of Fleischner, Mayer & Co. and are treated as part of the operations of that partnership.

The distributions made to the petitioner and other partners of partnership income did not distinguish between partnership income and income or proceeds derived from real estate held by the corporation.

The partnership discontinued its business in 1930 and ever since has been engaged in liquidating its affairs, including the real estate held in the name of the corporation. It did not alter the method of keeping its books or the manner of handling the real estate of the corporation.

Ordinarily corporations are held to have a legal existence for income tax purposes separate from their stockholders. See *Eisner* v. *Macomber*, 252 U. S. 189; *Dalton* v. *Bowers*, 287 U. S. 404; *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415. The courts and this Board have looked through form and regarded substance where the facts were peculiar. See *North Jersey Title Insurance Co.* v. *Commissioner*, 84 Fed. (2d) 898; *112 West 59th St. Corporation* v. *Helvering*, 68 Fed. (2d) 397; *Stewart Forshay*, 20 B. T. A. 537; *Moro Realty Holding Corporation*, 25 B. T. A. 1135; affirmed per curiam, 65 Fed. (2d) 1013; *Greenleaf Textile Corporation*, 26 B. T. A. 737; affirmed per curiam, 65 Fed. (2d) 1017; *Southern Pacific Co.* v. *Lowe*, 247 U. S. 300; *Gulf Oil Corporation* v. *Lewellyn*, 248 U. S. 71; *United States* v. *Jelenko*, 23 Fed. (2d) 511; *Thrift Realty Co.*, 29 B. T. A. 545. The question here must turn upon whether the facts warrant ignoring the form of the two separate entities.

In *North Jersey Title Insurance Co.* v. *Commissioner*, supra, the petitioner, to avoid jeopardizing its business by a disclosure of the fraudulent circumstances of some of its investments, formed a corporation, known as the Belhall Co., to acquire and deal with the properties for it. All of the stock of the Belhall Co., except one share to qualify the holder as a resident officer, was held by the petitioner. The corporation had no paid officers; only two paid employees, and obtained needed funds from the petitioner without interest. The petitioner kept separate books for the Belhall Co. and did all of the work of the corporation without charge. In holding that while in form two separate entities existed, in substance it was but one enterprise, the court said:

The principle that substance and not form should control in the application of income tax law is fundamental. Fictional corporate camouflage cannot be made the device to escape taxation. On the other hand equal equity demands that the creation of a subsidiary corporate structure with no purpose of evading

tax but solely for the purpose of meeting the exigencies of a serious and possible fatal financial situation should not be regarded as the birth of a new entity completely unidentified with the former for taxing purposes, particularly under the peculiar circumstances surrounding the instant case.

In *112 West 59th St. Corporation* v. *Helvering, supra,* counsel for a Massachusetts trust, to facilitate a contemplated resale of property, formed the petitioner corporation to hold and convey title to a parcel of real estate during absences abroad of the principal trustee of the trust. The petitioner never had funds; it kept no books, and held no stockholders' meetings. The purchase money for the property acquired in 1919 was paid directly to the seller by the trust, and on the sale thereof in 1921 the selling price was paid directly to the trust. The trust paid the carrying charges for the property while the petitioner held title. The corporation's officers and directors were employees of the law firm in which the transaction was carried out. The court taxed the trust on the gain realized from the sale on the theory that the trust had the beneficial interest therein, and used the corporation merely as a "conduit."

There is no suggestion that the corporation was organized and continued in existence for anything other than the mere purpose of holding bare legal title to real estate acquired with consideration furnished by the partnership. The partnership at all times treated the corporation as existing in name only and regarded the activities of both entities as a single enterprise. The corporation did not function as such, except in taking and conveying title to real property as a convenience for the partnership. The partnership having supplied the consideration paid for the property of the corporation, it was the beneficial owner of the corporate assets. *Neppach* v. *Norval*, 116 Or. 593; 240 Pac. 883; *Rhodes* v. *Peery*, 142 Or. 165; 19 Pac. (2d) 418; *Blacklaw* v. *Blacklaw*, 150 Or. 244; 44 Pac. (2d) 728.

Recognition by the partnership of no material distinction between its activities and those of the corporation has been continuous since the creation of the corporation, and since 1920 with the knowledge of the Commissioner. In the absence of anything of record or in the briefs to the contrary, we may assume that the partnership's treatment of the operations of the corporation as its own from 1920 to the taxable year has never been questioned by the Commissioner. The peculiar circumstances present in the case do not, in our opinion, warrant a holding that for the taxable year the corporation should be treated as a taxable entity separate from the partnership. Accordingly, and pursuant to the stipulation, we find that the partnership sustained a net loss of $16,995.25 in 1932.

*Decision will be entered under Rule 50.*