Argued December 8, 1966, affirmed March 29, 1967

LEMIRE ET AL, *Plaintiff, v.* McCOLLUM ET UX,
*Appellants,* BEDDOE ET AL, *Respondents.*

425 P. 2d 755

O. W. Goakey, Klamath Falls, filed a brief for appellants.

*Glenn D. Ramirez,* Klamath Falls, argued the cause for respondent Harley J. Hart. On the brief were Ramirez and Hoots, Klamath Falls.

Beddoe & Wood, Klamath Falls, filed a brief for respondents Arthur A. Beddoe and Doreen Beddoe.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL, DENECKE and REDDING, Justices.

REDDING, J. (Pro Tempore).

This is an appeal by Melvin and Edna McCollum, husband and wife, from a decree of the circuit court for Klamath county, foreclosing various mechanics' and materialmen's liens on Lot 31, in the First Addition to Madison Park, Klamath Falls, Oregon. These various liens arose out of the furnishing of labor and materials in the course of construction of a dwelling house upon the above lot. While in the trial court there were many parties, the only parties to this appeal, other than appellants McCollum, are respondents Harley J. Hart, and Arthur and Doreen Beddoe, hus-

band and wife, and only their interests need be considered. The other parties were mechanics and materialmen whose liens were held to be valid and which are not contested in this court.

The facts giving rise to this appeal, which from a review of the record we find established by a preponderance of the evidence, are as follows:

Sometime in the summer of 1958, Arthur Beddoe, a lawyer in Klamath Falls, and his wife, were looking for a suitable home. It was suggested to them by Harley J. Hart, a building contractor in the area, that he could build a home for them which would be more satisfactory for their needs than one they were then contemplating buying. Beddoe and Hart then conducted negotiations with McCollum, a partner in a building supply firm, who had from time to time financed Hart's operations.

It was agreed orally between the three parties that McCollum would supply materials and would cause Hart to construct upon land owned or to be purchased by McCollum prior to the commencement of construction, a dwelling house such as was contemplated by the Beddoes. The price, while left somewhat indefinite, was to range between $25,000 and $29,000. Beddoe orally agreed to buy the home from McCollum upon its completion. The trial court concluded, and its conclusion is supported by a preponderance of the evidence, that the agreement reached was that Mc-Collum was to be the owner of the land upon which the home was to be built. The home was to be built by Hart at McCollum's behest and Beddoe's only undertaking was that upon completion of the dwelling he would purchase it. Hart was to act as builder and general contractor for McCollum and had no contractual relation, express or implied, with Beddoe.

Under this arrangement, McCollum designated Lot 31 as the lot upon which the house was to be built, and on July 31, 1958, he made the first delivery of materials to the building site. On August 5, 1958, Hart commenced construction.

■ An unrecorded deed to Lot 31 at this time was held in escrow by Robert Veatch along with unrecorded deeds to other lots in Madison Park, under an agreement which accorded Hart, who was named as grantee in each of said deeds, the option to purchase any lot in the tract for the purpose of building thereon. Hart had made no payment on Lot 31. Title, therefore, both legal and equitable, remained in the escrow sellers, Robert and Helen Cheyne. *May v. Emerson,* 52 Or 262, 96 P 454, 96 P 1065 (1908). Robert Veatch, the escrow agent, had been given a power of attorney by Hart empowering Veatch, on behalf of Hart, to convey any of the lots to a third person upon payment being made to Veatch therefor. This arrangement was intended to facilitate persons desiring Hart's building services to acquire land upon which to build. Hart contemplated no acquisition of ownership of any of these lots for himself. Because, however, of the escrow agreement, title had first to pass through Hart.

■ On August 28, 1958, McCollum paid for Lot 31 and caused title to pass first to Hart, and then by virtue of Veatch's power of attorney, Veatch executed a deed to the McCollums on behalf of Hart. Prior to August 28, 1958, neither Hart nor McCollum had title to Lot 31. Hart's only privity to the title was as a conduit of the title from the sellers, Cheyne, to McCollum. The purchase price was furnished by McCollum, who intended Hart to take no beneficial interest in the

property. It was, on the contrary, clearly McCollum's intention to cause title to vest in himself. Under these circumstances, Hart's only contact with the title was as a resulting trustee for McCollum. *Blacklaw v. Blacklaw*, 150 Or 244, 44 P2d 728 (1935); *Rhodes v. Peery*, 142 Or 165, 19 P2d 418 (1933).

■ Appellant contends that because, for a fleeting moment, Hart held bare legal title, he cannot assert a lien on Lot 31 under the principle that one cannot hold a lien upon land which he owns. This contention, however, lacks merit. To hold that because title passed through Hart, as a mere conduit to McCollum, Hart cannot now assert a lien for his labor, is to disregard the substance of the matter. In substance, the McCollums paid for and obtained a conveyance to them from the Cheynes. Hart had no ownership interest in the property by virtue of his momentary status as resulting trustee which would require a court of equity to deny him a lien for labor which he performed at McCollum's instance.

Construction having commenced on August 5, 1958, continued until the home was completed on August 21, 1959. At that time the Beddoes discovered that the cost of the home amounted to $42,000, some $13,000 in excess of the maximum estimated cost. Because of this fact, the Beddoes refused to purchase the home.

Subsequently, the various mechanics and materialmen who were parties below, including the respondent Hart, filed liens. No challenge was made on trial or on this appeal as to the amount, quality of work done, dates or times of performance. No issue is raised on appeal as to the timeliness of filing of the Hart lien or of Hart's compliance with other statutory requirements to the perfecting of said lien.

It was established by a preponderance of the evidence upon the trial, and the trial court in its Findings, Conclusions and Opinion held that the Beddoes were not owners of the property in question, but that they had "* * * an oral option to purchase which * * * [they have] failed to exercise * * *." The court further refused to enter a personal judgment against them for the amount prayed for by Hart, on the ground that the Beddoes had not contracted for the materials or labor furnished by Hart, but had contracted orally to purchase the completed dwelling from McCollum.

■ With reference to the McCollums, the trial court was warranted by the evidence in finding that at all material times, subsequent to August 28, 1958, the McCollums were the owners of the property in question and that they had entered into a contract with Hart prior to that time for the construction of the dwelling.

Pursuant to these findings and conclusions, the trial court entered its decree relieving the Beddoes of all liability and entering a judgment against the appellants McCollum in the sum of $8,272.83, with interest, costs and attorneys fees, and foreclosed Hart's mechanics' lien for the above sum and ordered the real property as well as the improvement sold as provided by law. It is from this decree that the Mccollums have appealed.

■ Turning first to the matters raised as to the liability of the Beddoes to Hart. The evidence preponderates in favor of the trial court's conclusion that the only undertaking of the Beddoes was their oral promise to purchase the completed dwelling from McCollum. Such oral agreement, being for the purchase

of real property, was within the statute of frauds, ORS 41.580 (5),[1] and, therefore, unenforceable. The trial court aptly characterized the Beddoes' undertaking as "an oral option to purchase" from McCollum.

On trial, Hart contended that by the oral contract above mentioned, the Beddoes acquired a lienable interest in the premises. On appeal, McCollum urges that such agreement shows that the Beddoes, and not the McCollums, were the owners of the premises and held it subject to Hart's lien.

██ Though a contract purchaser's equitable interest in land is a lienable ownership interest under the mechanics' lien law, *Schram v. Manary,* 123 Or 354, 260 P 214, 262 P2d 263 (1927) and *Randolph v. Christensen et al,* 124 Or 661, 265 P 797 (1928), the contract giving rise to such equitable interest must be legally enforceable. *Panushka v. Panushka,* 221 Or 145, 349 P2d 450 (1960). As the Beddoes' contract to purchase the property was oral, and thus unenforceable under ORS 41.580 (5), the Beddoes, by their promise, obtained no equitable title which could be the subject of a lien for labor.

██ The fact that the Beddoes were not "owners" within the meaning of the mechanics' lien statutes is alone sufficient to defeat the claimed lien of Hart as against the Beddoes. Another factor in the case requires the same conclusion. ORS 87.010 provides that

[1] "ORS 41.580 In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged; or by his lawfully authorized agent * * *.

"* * * * *

"(5) An agreement for the leasing for a longer period than one year, or for the sale of real property, or of any interest therein."

before a lien for labor or materials will be recognized, the labor or materials performed or furnished must have been performed or furnished at the instance of the owner of the improvement or his agent. "* * * [A]t the instance of the owner * * *," has been held to mean that the "owner" must have contracted for the labor or materials. *Potter v. Davidson,* 143 Or 101, 20 P2d 409, 21 P2d 785 (1933); *Gabriel Pow. & Sup. Co. v. Thompson,* 163 Or 623, 97 P2d 182 (1940). The evidence, though conflicting, preponderates in favor of the conclusion reached by the trial court that the Beddoes made no agreement to compensate Hart for his labor or for McCollum's materials. Their only agreement was for the purchase of the completed building, and was unenforceable. Hart, in his testimony on the trial, maintained that he looked solely to McCollum for payment. The trial court properly refused to enter a personal judgment in favor of Hart and against the Beddoes.

■ We now come to the question as to whether the Hart mechanics' lien attached to Lot 31 owned by McCollum as well as to the improvement thereon. Mechanics' liens were unknown to the common law and are purely statutory. Therefore, before one can avail himself of such a lien for work done or material furnished, the statutory conditions to the existence of such a lien must be clearly complied with by the lien claimant. *Gordon v. Deal,* 23 Or 153, 31 P 287 (1892); *Ward v. Town Tavern et al,* 191 Or 1, 228 P2d 216, 42 ALR2d 662 (1951).

■ Such statutes are designed to protect laborers and materialmen who expend their labor and materials upon the buildings of others. Insofar as these statutes afford new remedies, they are liberally construed to effect the legislative purpose, but they are

strictly construed as to whom the remedies are available. As this court stated in *Anderson et al v. Chambliss et ux,* 199 Or 400, 404, 405, 262 P2d 298 (1953) :

"It is well established in this state that because the right to a lien is purely statutory, a claimant to such a lien must in the first instance bring himself clearly within the terms of such law. The statute is strictly construed as to persons entitled to its benefits and as to the procedure necessary to perfect the lien. A complaint in a suit to foreclose such a lien, to be sufficient to state a cause of suit, must allege every fact necessary to show that the claimant has complied substantially with the provisions of the statute entitling him to a lien. However, when the claimant's right to a lien has been clearly established, the law will be liberally interpreted toward accomplishing the purposes of its enactment. *Barber v. Henry,* 197 Or 172, 252 P2d 802, 806; *Ward v. Town Tavern et al.,* 191 Or 1, 14, 228 P2d 216, 221; *Timber Structures v. C.W. S.G. Wks.,* 191 Or 231, 246, 229 P2d 623, 25 ALR2d 1358; *Drake Lumber Co. v. Lindquist,* supra; *Andersen v. Turpin,* 172 Or 420, 425, 142 P2d 999."

The statutes with which we are here concerned and with which there must be substantial compliance before a lien can be established, are as follows:

"87.010 (1) Any mechanic, artisan, machinist, builder, contractor, lumber merchant, laborer, teamster, drayman or other person performing labor upon, transporting or furnishing any material to be used in the construction of any improvement shall have a lien upon the improvement for the labor, transportation or material furnished at the instance of the owner of the improvement or his agent."

"87.015 (1) The land upon which any improvement is constructed, together with such space as may be required for the convenient use and occupation thereof, to be determined by the court at

the time of the foreclosure of the lien, shall also be subject to the liens created under ORS 87.010, if, at the time the work or the furnishing of the materials was commenced, the land belonged to the person who caused the improvement to be constructed. If such person owned less than a fee-simple estate in such land, then only his interest therein shall be subject to the lien."

ORS 87.010 grants to laborers and materialmen coming within its terms "a lien upon the improvement for the labor * * * or material furnished at the instance of the owner of the improvement or his agent." But under ORS 87.015, the lien attaches to the improvement and the land. This is so only "if, at the time the work or the furnishing of the materials was commenced, the land belonged to the person who caused the improvement to be constructed. If such person owned less than a fee-simple estate in such land, then only his interest therein shall be subject to the lien."

 From the statutory language, it is apparent that there is a distinction as to the conditions which must exist to effect a valid mechanics' lien upon an improvement on the one hand and upon the land and improvement on the other. Hart commenced construction on August 5, 1958, on Lot 31. McCollum acquired title to said lot by deed on August 28, 1958. Prior to that time he had no title, legal or equitable, nor lienable interest of any kind in the premises.

In *Pacific Spruce Corp. v. Ore. Cement Co.,* 133 Or 223, 286 P 520, 289 P 489, 72 ALR 1507 (1930), the facts were similar to those here involved. In that case, work was commenced on certain land in Newport, Oregon on March 19, 1928, at the instance of Newport Hotel Co. It was not until March 20, 1928,

that the hotel company acquired title from Woodcock, the grantor, who was given a simultaneous purchase money mortgage. Woodcock had no knowledge of the construction. In issue was the priority between the mechanics lienor and Woodcock, the purchase money mortgagee.

Construing what is now ORS 87.010, the court stated in *Pacific Spruce Corp v. Ore. Cement Co.*, supra, at pages 227, 228 and 229:

> "* * * Under this clause, if the labor was performed or material furnished at the instance of the owner of the building, or his agent, the right to a lien upon the building exists * * *. This is the only section which confers the right to a lien and defines the cases in which a lien may be acquired, but whether the lien so acquired shall be a lien upon the land upon which the building is constructed must be determined by the other sections of the act.
>
> "* * * * *
>
> "Under stipulation it was agreed that the Newport Hotel company, the owner of the building, was not the owner of the land or of any estate or interest therein at the time the work was commenced * * *. Under this state of facts, the first moment of time when the liens upon the building could attach to the land was when the Newport Hotel company acquired title to the land from Woodcock, because prior to that time it had no interest in the land * * *."

It is to be noted that in *Pacific Spruce Co.*, supra, the "owner" had no lienable interest in the premises until after construction commenced. Nevertheless, the court held the land became subject to the mechanics' lien, after such interest was acquired, though subsequent to an intervening purchase money mortgage. The facts here are the same as in *Pacific Spruce*

*Corp. v. Ore. Cement Co.,* supra, except that here there is no intervening lien. McCollum, at whose instance the building was constructed, having subsequently acquired the land, we hold that the land as well as the improvement is subject to the mechanics' lien of Hart.

Affirmed, with costs to respondent Hart.