Argued and submitted March 7, reversed and remanded July 2, 1997

## TIGARD SAND & GRAVEL CO., INC.,
an Oregon corporation,
*Appellant,*

*v.*

## LBH CONSTRUCTION, INC.,
an Oregon corporation;
Kenneth R. Andrews, an individual;
Sandvik, Inc.,
a Delaware corporation;
Metos Sauna From Finland, Inc.,
an Oregon corporation;
and Centennial Glass Co., Inc.,
an Oregon corporation,
*Defendants,*

*and*

Reino J. A. TARKIAINEN
and Marilyn J. Tarkiainen,
husband and wife;
and First Interstate Bank of Oregon, N.A.,
a national banking association,
*Respondents.*

(C950547CV; CA A93716)

941 P2d 1075

Joseph A. Yazbeck, Jr., argued the cause for appellant. With him on the briefs were Jeffrey K. Hanson, Tamara H. Lewis and Allen, Yazbeck & O'Halloran, P.C.

Kenneth P. Childs argued the cause for respondents. On the brief were Charles F. Adams, Jill D. Bowman and Stoel Rives, LLP.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Plaintiff is an Oregon corporation that manufactures and sells aggregate rock products. It appeals a summary judgment for defendants in an action to foreclose a lien for aggregate products that plaintiff supplied to construction projects on two adjacent parcels of real property owned by defendants Tarkiainen. We reverse.

The two adjacent parcels of real property are located in Tigard. Defendant First Interstate Bank has an interest in both of them. One parcel is located at 14010 SW 72nd Avenue (14010) and constitutes Tax Lot 900. The other is located to the west at 13970 SW 72nd Avenue (13970) and constitutes Tax Lot 703. In May 1993, the Tarkiainens entered into a contract with a general contractor, LBH Construction Co., to construct improvements to an existing building on the 14010 property, the Finlandia Sauna Building. In December 1993, the Tarkiainens and LBH entered into a separate contract to construct two new warehouse/office buildings on the 13970 property, which was to be known as the Finlandia Business Center. In March 1994, the City of Tigard assigned street numbers 13950 and 13970 to the Finlandia Business Center property. The contracts thus resulted in one contractor performing work for the same owners on two contiguous parcels of real property.

LBH, as construction agent for the Tarkiainens, *see* ORS 87.005, ORS 87.010(1),[1] acted for the Tarkiainens on the two projects. Plaintiff had had a business relationship with LBH since 1992. The course of conduct between plaintiff and LBH was for LBH to order materials from plaintiff by telephone and for LBH to direct plaintiff to deliver the ordered

---

[1] ORS 87.005(3) provides that a construction agent "includes a contractor, architect, builder or other person having charge of construction or preparation." ORS 87.010(1) provides:

"Any person performing labor upon, transporting or furnishing any material to be used in, or renting equipment used in the construction of any improvement shall have a lien upon the improvement for the labor, transportation or material furnished or equipment rented at the instance of the owner of the improvement *or the construction agent of the owner.*"

(Emphasis supplied.)

materials to the particular site on which LBH was performing construction work. In December 1993, at LBH's request, plaintiff began delivering aggregate products to the Tarkiainens' property on SW 72nd. After plaintiff had made several deliveries, LBH requested a formal bid. Based on LBH's description of the project, plaintiff bid the project as one job. The bid identified the project as "Renio" [sic], the first name of one of the owners, at "72nd next to Power Rents."

Plaintiff's dispatch orders record LBH's directions to plaintiff. Throughout the construction, LBH used various addresses in requesting deliveries from plaintiff: "72nd"; "72nd in front of Power Rents"; "14010 SW 72nd"; "13970 SW 72nd"; and "13950 SW 72." LBH referred to the project as "Reino" and "Finlandia." In January 1994, plaintiff delivered to defendants a "Notice of Right to a Lien" for the 14010 address.

At summary judgment, defendants submitted plaintiff's invoices showing deliveries to 14010 in December 1993 and January 1994, and to 13970 from October 1994 through January 4, 1995. The invoices show either the 14010 or 13970 address with various directions to the property. The affidavit by the owner of LBH states that none of the material supplied by plaintiff after October 1994 was used on the 14010 property. Plaintiff submitted the affidavit of Robert George, its credit manager, showing deliveries to the 14010 address as late as September 1994, and to the 13970 address through December 1994.

In his affidavit, George stated that, by June 1994, he was confused about the designation of the job for purposes of perfecting a lien because of LBH's various designations of the project. George asked LBH's bookkeeper, Alice Daniels, to confirm his understanding that the various addresses described a single job. By facsimile, Daniels responded and advised George that she believed "13970 is same job [as 14010] also * * * 13910 SW 72nd[.]" To confirm that information, George tried to contact the project manager of LBH. When that person was not available, the LBH receptionist informed George that the project was all one job and the address was "14024 SW 72nd." In July, plaintiff delivered a Notice of Right to a Lien for property at 13950 SW 72nd and

in August a notice for property located at 13970 SW 72nd. All three lien notices provided tax lot numbers, township and range information and lender/security interest information.

In September, George determined that plaintiff might need to file a lien. He sent a facsimile to Daniels asking for updated information on "13970 SW 72nd"; "13950 SW 72nd"; and "14010 SW 72nd 'Finlandia' (aka 13910 & 14024 SW 72nd)." Daniels responded that all of the 72nd Avenue jobs were 14010 SW 72nd Avenue. In December, George informed Daniels that he was treating all of plaintiff's deliveries to the various 72nd Avenue addresses as one job, which he denoted as "SW 72nd."

On January 19, 1995, plaintiff filed its lien using the 14010 address. Plaintiff did not segregate the material delivered to the various addresses. In May, plaintiff filed its complaint to foreclose the lien. It attached a legal description for two parcels; the first described the 14010 parcel and the second an easement at the south end of the 14010 parcel. Neither description referred to the 13970 parcel.

Defendants answered and moved for summary judgment. They contended that there were two projects and two parcels of real property. They argued that plaintiff's lien was invalid as to the 13950/13970 parcel because it failed to describe that property and was invalid as to the 14010 parcel because it was not timely filed and included unsegregated lienable and nonlienable items. The circuit court granted defendants' motion.

Construction liens are purely statutory. *Lemire v. McCollum*, 246 Or 418, 426, 425 P2d 755 (1967). Strict compliance with all of the requirements of the construction lien statutes is not required for a lien to be valid. Substantial compliance may be sufficient to satisfy some of the requirements. *Id.* at 427. Whether there is substantial compliance with a particular requirement depends on the degree of noncompliance, the underlying policy of the requirement, and the prejudice that the owner of the property or third parties may have suffered as a result of the noncompliance. *McGregor Co. v. Heritage*, 291 Or 420, 424, 631 P2d 1355 (1981); *C-3 Builders, Inc. v. Krueger*, 56 Or App 502, 505, 642 P2d 344, *rev den* 293 Or 190 (1982).

Under ORS 87.035(3)(d), a lien must contain a "description of the property to be charged with the lien sufficient for identification, including the address if known." Plaintiff argues that, even if there were two separate projects and parcels of real property, it substantially complied with the identification requirement because (1) its description of the property to be charged was sufficient for identification, and, thus, the degree of noncompliance was minimal; (2) it met the underlying purpose of the lien statute because it advised the owners and mortgagee that plaintiff claimed a lien; and (3) defendants did not suffer any prejudice. Plaintiff argues that the underlying policy of the lien law as a whole, to protect laborers and material suppliers, would be defeated if its lien is not upheld.

Defendants argue that it is undisputed that there were two separate properties and two separate projects and that the lien, which contained no description whatsoever of the 13970 property, did not substantially comply with ORS 87.035(3)(d). Defendants contend that plaintiff's description did not meet the underlying purpose of the property-description requirement, which is "to provide a means whereby those interested can ascertain if the property in which they are interested is involved, and, if so, the charge upon it." *Cons. Elec. v. Jepson Elec.*, 272 Or 376, 381, 537 P2d 80 (1970). Defendants argue that the property description here cannot have advised defendants that the lien extended to the 13950/13970 property when the lien referred only to the 14010 property and was filed one year after the prelien notices for 14010 were filed and six months after the prelien notices were filed for the other property.

Plaintiff responds that defendants' position is a "very formalistic approach [that] actually demands precise compliance with the lien statutes, even though substantial compliance is all that the law requires." Plaintiff contends that defendants' arguments all presuppose that plaintiff's lien must be judged on its face alone, but that the correct standard to determine substantial compliance considers all of the facts of the case. *See Rogers v. Roberts*, 300 Or 687, 692, 717 P2d 620 (1986) (what constitutes substantial compliance with a statute is a matter that depends on the facts of each case).

▆▆▆  Summary judgment is appropriate under ORCP 47 if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. We review the record in the light most favorable to plaintiff, the nonmoving party, to determine whether the evidence in it establishes that there are genuine issues for trial. *Carl v. Oregon Automobile Ins. Co.*, 141 Or App 515, 520, 918 P2d 861 (1996). ORS 87.035(3)(d) requires a description of the property that is sufficient for identification. We conclude that, when the lien is considered in the light of the underlying facts, there are material issues of fact as to whether the lien substantially complied with that requirement.

Plaintiff used a preprinted lien form, filling in the blanks as indicated by the underlined portions. The form asserts that LBH was the original contractor

> "having charge of the construction of that certain improvement known as *FINLANDIA* situated upon certain land in the County of *Washington*, State of Oregon, which is the site of the improvement, described as follows:
>
> "*Tax Lot 900*
> "*Section 1DD Township 2S Range 1W*[.]"

In the blank for the address of the improvement, plaintiff wrote "*14010 SW 72nd*."

In *C-3 Builders, Inc.*, the lien claimant did not correctly identify anything: the business, tax lot number and address of the restaurant for which it furnished labor and materials were all wrong. Nonetheless, we held that the description "was still sufficient to enable defendants to identify the property covered." 56 Or App at 506. Although in *C-3 Builders, Inc.*, only one parcel of property was involved and here there are two adjacent parcels, we conclude that here, too, there is evidence from which it could be concluded that the description gave defendants sufficient notice. The tax lot and the address are incomplete, but the business is identified as "Finlandia." Plaintiff supplied materials for construction on both the Finlandia Sauna Building and the adjacent Finlandia Business Center. LBH, as construction agent for the owners, represented to plaintiff that the construction was one job known as Finlandia at 14010 SW 72nd. Under those

facts, the lien description could be found to have given defendants notice that the lien was for the sites of all the construction.

In *C-3 Builders, Inc.*, we noted that the defendants were not misled by the inaccuracies in the property description and had actual notice of the lien. 56 Or App at 506. Defendants argue that here "it cannot be said" that there was no "misleading effect," when plaintiff sent prelien notices for separate parcels but placed the lien on only one. Under those circumstances, they argue, it cannot be said that the lien gave them notice that the lien was intended to encompass both properties. However, in the light of LBH's representations to plaintiff about the unitary nature of the project, a conclusive inference of prejudice does not arise. Whether defendants were misled remains an issue of fact.[2]

The purpose of the construction lien statutes is to protect those who provide services and materials for others' building projects. *Pendleton Grain Gr. v. Sunbest Corp.*, 271 Or 48, 54, 530 P2d 82 (1975). Measuring plaintiff's lien against that underlying policy, there was evidence from which it could be concluded that plaintiff's noncompliance with ORS 87.035(3)(d) was minimal and that defendants were not prejudiced by plaintiff's incomplete description.[3] Because there are material issues of fact about whether plaintiff's lien substantially complied with the statutory requirement, the trial court erred in granting summary judgment to defendants.[4]

---

[2] Defendants contend, however, that plaintiff's alleged belief in the existence of a single project is called into question by its own actions in filing prelien notices on three addresses and sending invoices for different addresses. The validity of plaintiff's belief is a question of fact that cannot be resolved on summary judgment.

[3] Defendants do not contend that the defects in plaintiff's lien affected any rights in the property other than their rights. Consequently, the validity of the lien depends on the extent to which defendants were prejudiced by the defects. *See, e.g., C-3 Builders*, 56 Or App at 505.

[4] Because of our determination, we do not address plaintiff's arguments that the lien was timely and that it did not include unsegregated lienable and nonlienable items.

Plaintiff also assigns error to the circuit court's award of attorney fees to defendants as the prevailing parties. Reversal of the attorney-fee award necessarily follows from our reversal of the judgment for defendants.

Reversed and remanded.