MARTHA SHELBY, MATHILDA SHELBY LIEBER, JEANETTE SHELBY BENSON
and RALPH SHELBY v. MAXINE SHELBY, Appellant.—No. 40466.
—209 S. W. (2d) 896.

Division Two, March 8, 1948.

Motion for Rehearing or to Transfer to Banc Overruled, April 12, 1948.

*Eli C. Seigel* for appellant.

558

*Francis C. Flynn* and *Norman C. Parker* for respondents.

[897] BARRETT, C.—This is a suit by three sisters and a brother against their sister-in-law to establish a trust in a five room residence at 5730 Pernod Avenue in St. Louis. The question upon this appeal by the sister-in-law, the court having decreed a trust, is whether the facts and circumstances relied upon compel, indubitably, an affirmance of the decree. St. Louis Union Trust Co. v. Busch, 346 Mo. 1237, 1244, 145 S. W. (2d) 426, 430; Suhre v. Busch, 343 Mo. 679, 700-701, 123 S. W. (2d) 8, 19.

There is no dispute as to the sequence of events or, for that matter, as to the facts. The question arises upon the explanations and the inferences to be drawn from the facts and events. In 1939 the Shelby family consisted of the father and mother, George and Ella, and their five children, Ralph, Martha, Matilda, Emil and Jeanette. In August 1939 the Shelby family contemplated purchasing a home.

Accordingly, in August, one brother and one sister, Emil and Jeanette, signed an earnest money contract. They were unable to meet the requirements for an FHA loan, however, and the real estate man "switched Shelby over to the house on Pernod." On November 6, 1939, Freda Sisk, the record owner, conveyed the property by warranty deed to the mother, Ella Shelby. The purchase price of the property was $6,250.00; in addition there were expenses of $160.46. The real estate dealer gave Emil an itemized statement of the transaction showing in detail the debits and credits. On the credit side there was earnest money, $300.00; first deed of trust, $4,500.00; two months' interest, $37.50; second deed of trust, $850.00; taxes, $14.60 and "balance due, $708.36." There was also a receipt for $708.36. The $300.00 earnest money and the $708.36 receipted for constituted the down payment of $1,000.00. On the day, November 6th, the deed was delivered to the mother, the mother and father, George and Ella, executed a first deed of trust on the property to secure the $4,500.00, and a second deed of trust to secure the sum of $850.00. The seven members of the Shelby family immediately moved into the property. On February 8, 1940 the father and mother, three months after the purchase, conveyed the property to the son, Emil. In June 1941 the father died and in February 1942 the mother died. About the time the mother died the older brother, Ralph, married and "moved out." In May 1942, before leaving to join the army, Emil conveyed the property to his sister, Martha. The three sisters, Martha, Jeanette and Mathilda, then lived in the house until 1944 when Mathilda married and moved out. On September 8, 1944 the first deed of trust matured and Martha, as the record owner, signed a "renewal agreement" extending the loan to 1947. In 1943 Emil married the appellant, Maxine. Most of the time she followed Emil to various military posts. In the summer of 1944, however, she returned to St. Louis and lived with Martha and Jeanette for three months. In April 1945 Emil received a medical discharge from the army and he and Maxine returned to 5730 Pernod. Jeanette and Martha remained in the house with Emil and Maxine about a month and then moved into a rented room. Maxine says that her husband gave them sixty dollars that they might find a place to live. On January 2, 1946 Martha conveyed the property by warranty deed to Emil's wife, Maxine. In May 1946 Emil died and Martha and Jeanette returned to the house and lived with Maxine until the following August when Maxine announced her intention to sell the property and her sisters-in-law and Ralph claimed an interest in the property and instituted this suit.

The three sisters and the brother, Ralph, testified that each member of the family contributed from $150.00 to $200.00, "whatever we had" to the $1,000.00 down payment. Martha said: "I can't say exactly, but approximately from one hundred to two hundred

dollars apiece." As a part of the $1,000.00 she says they borrowed $300.00 from a Mr. Schultz which they repaid in installments. Jeanette said: "We," (meaning the family) "bought the property" and each paid "two or three hundred dollars" towards the down payment. Mathilda, who was eighteen in 1939 and in high school part of the time, [898] said that each member of the family contributed "at least $100 or $200 apiece." And Ralph said: "Between $150 and $200—whatever we had; we never kept no record of it, or anything; we all pitched in." The Shelbys testified that they were all working and turned their money over to the mother who gave them what they needed and the balance was used to pay for the property.

Admittedly there was no consideration for any of the conveyances except the original deed to the mother. As to the taxes Martha said: "Well, from the time we bought it until the time Emil came home . . . we all kept it up together; when he went in the army, it was just my two sisters and my brother Ralph that kept up the taxes and interest." It should be noted, however, that Ralph did not testify to any payments of interest or taxes or to making any contributions other than to the $1,000.00 down payment. One year, probably in 1944, Emil did send $60.00 to apply on taxes. In 1942 Emil wrote to Martha and Jeanette and among other things said: "Is that all you have saved up is $80.00? How are you going to pay the tax on the house. You know that's $118.00 for tax alone. I don't have the money. Don't let that tax pile up, please. You all can save that money if you tried. . . . You have to save up about $20 and $118.00 yet. You know that's $138.00 you have to save yet. So work hard, baby, I can't pay your tax for you. I'm trying to save $500.00, you know, for the loan." In another letter he complained about an insurance premium being due and said: "I paid them for a whole year." None of the parties paid rent when they lived in the house and the appellant, Maxine, claims that any payment of taxes was in lieu of rent.

The $850.00 second deed of trust was paid off, Martha claimed from the fund her mother collected from all the family. The mother died however in February 1942 and the final payment of $151.38 on the $850.00 note was made on April 22, 1942. The real estate dealer did not remember who made the final payment although it was paid about the time a $500.00 payment was made on the principal note. It was admitted by Martha and conceded by everyone that Emil made two $500.00 payments on the principal indebtedness of $4,500.00, the first one on April 10, 1942, and the second one on September 13, 1944. Emil sold his automobile and made one of the payments. Martha claimed that other members of the family had helped pay for his car, however. Emil's wife, the appellant, claims that his car sold for enough to pay $500.00 on the principal and the six or seven

notes representing the balance of $151.38 on the second deed of trust. In addition, she says that the second payment of $500.00 consisted of $465.00 that she and Emil had saved and $35.00 she contributed and the parties stipulated that Maxine purchased a $500.00 cashier's check payable to the Armbruster Realty Company. Since Emil's death in May 1946 Maxine has paid the taxes and interest. The last conveyance, to Maxine, was executed in the recorder's office. Emil called Martha and had her meet him there and requested her to sign the deed. She said she did so thinking it was to Emil, until she started to sign, when she noticed it was to Maxine. The property has increased in value, and is now worth from $9,000.00 to $13,000.00, subject to the balance of $3,500.00 yet due on the first deed of trust.

In these circumstances, the respondents, the brother and sisters, contend that an "implied trust" arose. In their brief and argument they do not distinguish between a resulting trust and a constructive trust but argue, first, that "a resulting trust arises when the purchase price of property is paid by several persons and the title taken in the name of one of them." They contend that the uncontradicted evidence shows that "the purchase price of the property was paid equally by the plaintiffs and other members of the Shelby family" the title being taken in the mother's name as trustee and therefore all subsequent titleholders held as trustee of a resulting trust for the family. Second, it is argued that Maxine paid no consideration for the conveyance to her and therefore she "holds the property as constructive trustee for the equitable owners and she will not be permitted unjustly to enrich herself by retaining it."

This is not to say that equitable relief must necessarily be denied merely because [899] the parties fail to observe the precise differences in constructive and resulting trusts. It is not necessary to again point out the distinctions, it is sufficient for the purposes of this opinion to say that "They are not species of the same genus. They are distinct concepts." Restatement, Restitution, p. 641. For full discussions of the differences in constructive and resulting trusts see 3 Scott, Trusts, Sec. 4011, p. 2163; 3 Bogert, Trusts, Sec. 471; 2 Restatement, Trusts, p. 1249 and Kerber v. Rowe, 348 Mo. 1125, 1129-30, 156 S. W. (2d) 925, 927.

Jankowski v. Delfert, 356 Mo. 184, 201 S. W. (2d) 331, relied upon by the respondents, is a typical resulting trust case. There the full purchase price was paid by the plaintiff but the title to the property was transferred to the defendant, consequently a typical resulting trust arose. 2 Restatement, Trusts, Sec. 440. That is not this case. Here the parties, the sisters and the brother, Ralph, do not and cannot claim that they or the family paid the purchase price. They claim that they paid some of the taxes and they claim that they contributed to the payment of the second deed of trust. It

may be interpolated here, however, that Ralph left home fourteen months after the property was purchased, that Mathilda was a girl of eighteen, a free lance artist when employed and that the father and mother died within fifteen months of the purchase. In its final analysis the plaintiffs' claim to a resulting trust must rest upon their contribution to the $1,000.00 down payment which, in itself, was less than one-sixth of the purchase price. In that circumstance, part payment of price by several and transfer to another, there could be a resulting trust if that were the only circumstance. 2 Bogert, Trusts, Sec. 457; 3 Scott, Trusts, Sec. 454; 54 Am. Jur., Sec. 216, p. 166; Stevenson v. Smith, 189 Mo. 447, 88 S. W. 86; Baumgartner v. Guessfeld, 38 Mo. 36. "Where a transfer of property is made to one person and a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made in such proportion as the part paid by him bears to the total purchase price, unless he manifests an intention that no resulting trust should arise or that a resulting trust to that extent should not arise." 2 Restatement, Trusts, Sec. 454. There is the additional fact in this case that neither the plaintiffs nor their brother, Emil, were obligated to pay either the first or second deed of trust. 2 Restatement, Trusts, Sec. 456. The inference from the asserted claim, however, is that the Shelby family had tacitly agreed that they should all pay the mortgages and so we do not consider that fact alone as determinative against a resulting trust. 2 Restatement, Trusts, p. 1394; 54 Am. Jur., Sec. 217; 3 Scott, Trusts, Sec. 456. Compare 2 Restatement, Trusts, Sec. 457; 3 Scott, Trusts, Sec. 457.

Some further analysis and consideration of the basic facts relied upon may indicate more clearly the basis of our view that the explanations and inferences are not sufficiently cogent and substantial to compel the conclusion of a resulting trust. The property was purchased in November 1939, the family moving into it in December, and from that date to the present none of the plaintiffs has paid any sum on the principal indebtedness. Emil paid the balance on the second deed of trust in April 1942 so it has been six years since any of the plaintiffs made a contribution to that indebtedness. No books or records of the transaction or of any payments or contributions were kept. There was testimony that the plaintiffs paid some taxes but no specific sums were identified or testified to. There is some indication that the payment of taxes was in lieu of rent. If the seven, including Emil, contributed $150.00 to $200.00 to the original down payment the present plaintiffs contributed an average sum of $145.00 each, which is indeed an insubstantial proportionate part of the purchase price. Emil made the same contributions the plaintiffs made and in addition paid the insurance, $1,000.00 on the principal indebtedness and the balance of $151.38 on the second deed of trust. These payments were conceded by the plaintiffs.

In short, the explanations and inferences in this case fall within the rule that "One who proves that he paid 'some money' toward the price of land which was conveyed to another should get no trust, because of the indefiniteness and vagueness [900] of his evidence." 2 Bogert, Trusts, Sec. 457, p. 1385; 3 Scott, Trusts, Sec. 454.5, p. 2292. In Adams v. Adams, 348 Mo. 1041, 156 S. W. (2d) 610, a son contributed $100.00 to the $650.00 purchase price of lots. The lots were conveyed to his father and the father and mother gave a deed of trust for the balance of $550.00. It was held, even though the son subsequently paid the notes and certain taxes, that "The facts of the instant case force us to the conclusion that the Chancellor was right in refusing to decree a resulting trust in favor of appellant. The evidence was not of the clear and convincing character required by our law." See also in this connection Clubine v. Frazer, 346 Mo. 1, 139 S. W. (2d) 529 and Biondo v. Biondo, (Mo.) 179 S. W. (2d) 734. A comparison of two Oregon cases precisely illustrates the degree and quality of proof required to establish a resulting trust in the circumstances of this case. In Blacklaw v. Blacklaw, 150 Ore. 244, 44 P. (2d) 728, the evidence clearly showed that over a period of years family earnings, pursuant to agreement, had been contributed to a common fund to purchase property and it was held that a trust resulted. On the other hand, in Savage v. Savage, 163 Ore. 26, 94 P. (2d) 134, it was held that the evidence of the wife's contribution was too indefinite, vague and insubstantial to support a resulting trust.

The same degree of clear and convincing evidence is required to establish a constructive trust. 3 Bogert, Trusts, Sec. 472, p. 13. And in the detailed circumstances we cannot say that Emil's wife, Maxine, so acquired and holds the title to the property that she is subject to an equitable duty to convey it to the plaintiffs on the ground that she would be unjustly enriched at the expense of the plaintiffs. Restatement, Restitution, Sec. 160. Again the explanations and inferences do not indicate such a substantial and unjust deprivation of plaintiffs' property and a corresponding unjust enrichment of the defendant that restitution is indubitably compelled. Suhre v. Busch, 343 Mo., l. c. 694-695, 701, 123 S. W. (2d), l. c. 15-16, 19.

In thus trying the case anew we have assumed that all the plaintiffs' evidence was admissible and that the plaintiffs were in no wise disqualified as witnesses by reason of the death of their parents or their brother. Mo. R. S. A., Sec. 1887. In the view we have taken of the case, it is not necessary to express an opinion on that question.

In accordance with the views expressed in this opinion the judgment is reversed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by Barrett, C., is adopted as the opinion of the court. All the judges concur.