Floyd READENOUR, Respondent,

v.

MOTORS INSURANCE CORPORATION, Appellant,

Farley State Bank, Interpleaded Defendant.

No. 22313.

Kansas City Court of Appeals.

Missouri.

Jan. 9, 1956.

**136**

Watkins & Watkins, C. D. Hale, St. Joseph, for appellant.

Richard W. Mason, Homer C. King, St. Joseph, for respondent.

DEW, Presiding Judge.

The plaintiff brought this action in two counts. In the first count he sought to reform the insurance policy sued on so as to include a mortgage clause as if attached thereto, and in the second count he asked for damages under the policy for the loss of his combine harvesting machine by fire, including attorneys' fees and $250 for vexatious refusal to pay the loss. On the application of defendant Motors Insurance Corporation, the court permitted it to interplead the Farley State Bank of Farley, Missouri, as a party defendant and to file a third party petition accordingly. On separate trial of the first count the court decreed reformation of the policy to show a mortgage clause attached. On trial of the second count, tried before a jury, a verdict was rendered for the plaintiff in the sum of $800 damages, subject to a lien in favor of the Farley State Bank in the sum of $700. The issue of damages for vexatious refusal to pay and other penalties was not submitted. After judgment on Count II, a motion for new trial of that count was filed by the defendant Motors Insurance Corporation, only, which was overruled, whereupon said defendant brought this appeal. Hereinafter the word "defendant" will apply only to Motors Insurance Corporation, the appellant.

The substance of Count I of the plaintiff's petition is that on May 28, 1952, he was the owner of a certain International 1949 12-foot combine harvester and on that date, defendant, through its agent, issued the policy sued upon and which was attached to the petition as an exhibit, insuring the combine against fire and other hazards as defined in the policy; that at the time the policy was issued plaintiff told defendant's agent and servant that said combine was mortgaged, and that a clause to that effect should be attached to the policy, a fact well known to said defendant and its agent, but that said agent failed to attach said clause to the policy and accepted plaintiff's premium for said policy at the time in the sum of $47.25; wherefore, the plaintiff prayed for an order reforming the policy to read

as if said mortgage clause were attached, it being the mutual understanding between plaintiff and defendant that said equipment was insured with a mortgage clause attached, but that said defendant failed to attach the same on the policy.

Plaintiff's Count II adopted the allegations of his Count I and alleged that on May 27, 1953, while the aforesaid policy was in effect, the harvester described in Count I was substantially damaged by fire in the sum of $2,500; that although the fire occurred without the fault of plaintiff and although plaintiff notified defendant promptly of said loss, defendant failed and refused to pay the same and has vexatiously refused to adjust the loss or damage as required by the terms of the policy, making it necessary for plaintiff to employ counsel to collect the amount due him under the policy, and reasonable attorneys' fees in the sum of $225, and that plaintiff should recover also 10 percent of the value of said loss, in the sum of $250.

Prior to the answer the parties agreed to admit in evidence without further identification or objection, a letter to the defendant from the Farley State Bank as follows:

"June 29, 1953
"Motors Insurance Corporation
Kansas City, Mo.

"Gentlemen:

"This is to advise that we hold a chattel mortgage note dated July 23, 1952 signed by Floyd and Cecelia Redenour, Cameron, Mo. in amount of $1000 with interest from July 23, 1952, at rate of 7 per cent. The note is secured by chattel on a 1949 McCormick-Deering self-propelled 12 ft combine.
"Very truly yours,

/s/ Wallace J. Farley
Cashier".

For its answer the defendant denied generally the allegations of the petition, pleaded laches, defect of parties and the fact that the petition sought damages for willful failure of the defendant to pay the alleged loss and at the same time asked that the policy be reformed to contain the mutual understanding of the parties in which event, in case of loss, the defendant should pay the same under the policy to the mortgagee. The answer proceeded to allege grounds for its application to interplead the Farley State Bank, which application was later sustained, as stated.

The defendant thereupon filed a petition in interpleader, alleging that it had received written notice from the Farley State Bank that it claimed an interest in the alleged contract sued upon by the plaintiff and claimed to have a mortgage on the property in question at the time of the alleged fire, and, therefore, upon the proceeds payable thereunder. It was stated that a complete determination of the controversy required the presence of the Farley State Bank as a party, praying for the issuance of summons accordingly.

Plaintiff thereafter filed a motion to reform the policy of insurance, as pleaded in Count I of his petition, setting forth that the question was one in equity rather than one in law, and should be determined prior to a hearing on the merits of Count II. With the agreement of the parties in open court, the court proceeded to try Count I of the petition separately as a proceeding in equity.

The evidence pertaining to Count I need not be set out or considered on this appeal. Count I states an action in equity for reformation of the insurance contract, was so construed by the court and, by the consent of both parties in open court was separately tried as such and a decree was rendered for the plaintiff thereon on October 19, 1954. No motion was filed for a retrial of Count I. After the decree in Count I, the court made no order to hold it in abeyance to abide the judgment on the second count, nor to declare it of an interlocutory nature. The second count was tried nearly three months later before a jury, and the verdict and judgment were rendered therein on January 12, 1955, solely on the issues of Count II. After defendant's motion for retrial of Count II was filed and overruled, defendant appealed

from the judgment "entered by this court in this cause on January 12, 1955". In the trial of Count II the court instructed the jury to disregard the fact that the policy showed no existing mortgage on the combine (the issue in Count I) since the court had already decreed a reformation of the policy to show such mortgage as if originally endorsed on the face of the contract. Under the circumstances and under Section 512.-020 RSMo 1949, V.A.M.S., and 42 V.A.M.S. Supreme Court Rules, rule 3.29, the decree and judgment of the court on Count I is a final judgment which, for want of appeal therefrom, is an adjudication of the issues therein involved. Lightfoot v. Jennings, 363 Mo. 878, 254 S.W.2d 596; Harper v. St. Joseph Lead Co., 361 Mo. 129, 233 S.W. 2d 835. Hence it would serve no purpose to set out the evidence pertaining solely to Count I, nor would it be proper to consider the following points made on this appeal but submitting specifications of error in the trial of Count I.

### "II.

"Count I of the petition sought reformation of a contract. At the close of plaintiff's evidence on Count I defendant filed a motion for a directed verdict. The court erred in overruling this motion because there was no showing that a contract existed and no showing of mutual mistake.

### "III.

"The trial court found J. W. Lewis, Jr., to be the agent for the defendant and the defendant bound by his knowledge. This was error. The evidence showed that Lewis procured the insurance from the defendant and was the agent of plaintiff.

### "IV.

"Count I sought reformation of a contract. Plaintiff did not show by clear evidence an obvious mutual mistake. Therefore the court erred in reforming the contract.

### "V.

"The court erred in entering a judgment for plaintiff on Count II for breach of contract. Defendant had shown that in violation of the terms of the contract the plaintiff had put on the property insured an accumulation of four (4) undisclosed liens.

### "VI.

"Plaintiff's instruction Number 2 told the jury they need not consider whether defendant knew of the existence of any mortgage, that the court had already determined this issue against the defendant. This was prejudicially erroneous and excluded a vital issue from the case."

At the trial of Count II, the plaintiff, a farmer 63 years of age, testified that in 1949, he purchased the combine from Lewis & Son, implement dealers at Platte City, Missouri, and for several years had taken out annual policies of insurance on it as required by the Farley State Bank, to which Lewis had assigned the original mortgage on the machine. He had purchased them and the policy sued on from J. W. Lewis, Jr., of the said firm of Lewis & Son. He depended entirely upon Lewis to look after the insurance on the machine. The policy in question insured the combine for its actual cash value not to exceed $4,500 against damage by fire and other hazards described, for one year, beginning May 28, 1952, ending at 12:01 a. m. on May 28, 1953. The policy provided that it did not apply to any automobile subject to any mortgage or other encumbrance not specifically described in the policy. No mortgage was described or declared in the policy in question. The preimum paid was $47.25, no part of which has been returned or tendered.

Plaintiff testified that on May 27, 1953, between 11:00 and 11:30 a. m., he was attempting to hoist and attach the bin to the elevator of the combine and backed the machine up to a tree for that purpose, and when he did so the combine caught fire and the sediment bulb burst. Plaintiff, fearing

the tank would blow up, jumped off over the side, ran about 100 feet to a well and carried many buckets of water to the burning machine, throwing the water on it and upon a shed nearby. He said the fire blew the tires out and damaged the transmission, wheels, drive sprocket, drive chains, the clutches and the steering wheel. He said the seat was badly burned and the wiring, battery and cables were badly burned. Plaintiff had at one time worked in a garage and also had experience in handling machinery of his own on his farm and was able to ascertain what parts were damaged and required repair or replacement. He obtained from the International Harvester Company a list of the parts needed to repair the damage, and the prices of the same. He had never had a fire before and the combine was in good condition before the fire described. He made some repairs to the wiring and cylinders and was able to get the motor running but it developed no power and ran too hot to operate.

Plaintiff further testified that on the following morning, May 28, 1953, at about 11:00 a. m. he and his wife went to see Mr. Lewis, Jr. and told him of the fire and asked him to make out a proof of loss. Lewis said that would not be necessary, and that he would "call the company". Lewis then tried to telephone someone in Kansas City in plaintiff's presence, but was unable to reach the party desired. They then went to the Farley State Bank, where Lewis later talked to someone by telephone about the loss, after which he told the plaintiff he need not wait longer, that "I will take care of it". Written notice of loss, however, was later made by Lewis and mailed to defendant, dated May 28, 1953, stating the date of the loss to be May 27, 1953. Plaintiff said defendant's claim manager later told him that defendant refused liability for the loss.

Defendant introduced a letter dated June 10, 1953, signed by the plaintiff, but dictated by his attorney, addressed to the defendant. It called to the attention of the defendant the plaintiff's loss occurring "May 27, 1953", and stated that "on the same date" the writer had previously called the defendant and

had reported the loss. The writer again offered a written proof of loss if desired and requested an early settlement. However, plaintiff testified that the letter was in error in stating that he had reported the loss on "the same day", but that the loss had occurred on May 27, 1953, and was not reported until May 28, 1953.

Plaintiff's wife in her deposition had stated that she did not know on what date the fire occurred, but at the trial she stated positively that it was on May 27; that she and plaintiff notified Mr. Lewis the next day, May 28, when Lewis made a long distance call about the loss.

An implement dealer handling parts used by International Harvester, testified that he had inspected plaintiff's combine after the fire and that the costs of the necessary parts to repair it would be $1,565.62, plus painting and tires. There was other evidence of the extent of the loss.

Defendant offered evidence tending to prove that the loss occurred on May 28, 1953, after the policy had expired, rather than on May 27, 1953; that when plaintiff reported his loss to Lewis he did so on "the same day" it occurred, namely, May 28; that plaintiff had interfered from time to time with the defendant's inspection of the machine and had later concealed its whereabouts; that plaintiff had expended only $66.79 in new parts after the fire.

■ Defendant's first point is that the petition failed to allege that defendant is a corporation, and for that reason the court should have dismissed the petition for such failure under defendant's motion. That motion was made on the general ground that the petition failed to state a cause of action and was overruled. At no time did defendant, by specific negative averment, raise the issue of its corporate character. Its name denotes its corporate form. The insurance policy sued on and issued to the plaintiff was executed by its "president" and "secretary". Its claim agent was permitted without objection to testify that he "understood" defendant was incorporated in New York. Section 509.140 RSMo 1949, V.A.M.S., pro-

vides that: "It shall be sufficient to aver * * * the legal existence of a corporation * * * that is made a party. When a person desires to raise an issue as to the legal existence of any party * * * he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge. When a party so raises such issue, the burden thereon shall be placed upon the opposite party". Under the statutes cited and under the record we find no merit in this assignment.

Defendant's Point VI, the only remaining point reviewable on this appeal, is that plaintiff's Instruction 1 joined the issues of liability and the amount of damages; that it suggested to the jury the verdict should be for more than $700 and should not exceed $4,500, which was confusing and misleading to the jury. In substance plaintiff's Instruction 1 required of the jury, in event of a verdict for the plaintiff, that it find and believe from the evidence that plaintiff owned the combine on May 28, 1952; that the policy in question was issued to the plaintiff to secure said combine against the hazards of fire "for the actual cash value thereof, not to exceed the sum of $4500"; that on May 27, 1953, while the policy was in effect, and the plaintiff was still the owner of said machine, the said combine was damaged by fire; that plaintiff gave notice to the defendant under the policy and had complied with the terms of the contract, and further find that the company had failed to pay the plaintiff for said loss. The instruction further told the jury that if they so found and believed from the evidence, then "your verdict must be for plaintiff and you will assess plaintiff's damages at the amount which you find and believe from the evidence to be the reasonable cost to repair the parts of said combine which were damaged by the fire, if any, or to replace the same with others of like kind and quality, subject to a lien of $700 in favor of the Farley State Bank". An instruction on the form of a verdict, if for the plaintiff, also contained the concluding words respecting the lien of the bank.

Defendant asserts that there was no showing before the jury that the bank had a lien for $700 and says that the jury lost sight of the reasonable cost of parts for repair or replacement, believing it was necessary to return a verdict sufficient to pay off the lien, plus the amount of repairs. The plaintiff calls attention to the fact that on the trial of Count I, the original mortgage was shown to be $3,200, but that the last renewal was in the amount of $700. It submits that the defendant caused the Farley State Bank to be brought into the case because of its mortgage interests, and that it was proper to explain to the jury the mortgage lien affecting the policy in evidence, which had been reformed to include a mortgage clause not actually shown on the face of the policy. It contends further that any loss on the policy would be payable directly to the insured and only indirectly to the mortgagee, and that the instruction plainly told the jury that if they found for the plaintiff they would "assess plaintiff's damages at the amount which you find and believe from the evidence to be the reasonable cost to repair the damage to the parts of said combine, which were damaged by the fire, or to replace the same with others of like kind and quality". The foregoing measure of damages last quoted was also given in an instruction requested by the defendant.

We cannot consider the evidence under Count I in disposing of this point, as we have already pointed out. However, it was proper for the court to explain to the jury the participation of the Farley State Bank in the trial of Count II. The bank had been brought into the case at the instance of the defendant. It was proper for the court to explain to the jury the absence of a mortgage clause on the policy by informing them that the court had previously ruled the reformation of the policy to require consideration of a mortgage clause not in fact appearing thereon. In so explaining and defining the measure of damages the court properly told the jury that the verdict, if for the plaintiff, would be subject to the mortgage of the bank. In

so doing, the fact that the court named the amount of the mortgage lien cannot be said to have been prejudicial to the defendant. The jury was not instructed to determine the amount of the mortgage lien. The amount of the mortgage balance was not in dispute. Neither the plaintiff (the mortgagor) nor the bank (the mortgagee) has challenged the amount to which the verdict was made subject. The award reasonably necessary to repair the damage to the parts or to replace the same with like kind and quality could not be increased or decreased by the amount of the bank's mortgage lien on the combine. Defendant did not make any such specific exception to the instruction in its motion for new trial. We think the inclusion of the amount of the mortgage lien in the instruction referred to was not, under the circumstances, prejudicial to the defendant. Judgment affirmed.

All concur.