CONNIE PIZZO, Respondent, v. DON F. PIZZO, JOE PIZZO and ROSE PIZZO, Appellants, No. 44762—295 S. W. (2d) 377.

Court en Banc, November 12, 1956.

*Philip A. Foley* for appellant.

1226

*Edward H. Tenney, Jr.,* and *Joseph J Howard* for respondent; *Tenney, Dahman & Smith* and *Cook, Fairfield, Howard & Murphy* of counsel.

[378]  DALTON, J.—On March 31, 1954, plaintiff instituted an action in four counts against defendant Don F. Pizzo in the circuit court of St. Louis County. In count one (on the theory of a resulting trust) plaintiff sought to be declared the owner of an undivided one-half interest in particularly described real estate and personal property located in St. [379]  Louis County; in count two she asked for an order for partition of the described property; in count three she asked damages for breach of promise of marriage; and in count four she asked actual and punitive damages for personal injuries resulting from a assault and battery. Thereafter, on April 12, 1954, defendant transferred the described real estate by warranty deed to Joe Pizzo and Rose Pizzo, his uncle and aunt, with whom he resided. On May 7, 1954, plaintiff filed an amended petition joining Joe Pizzo and Rose Pizzo as additional parties defendant and she added a fifth count in which she asked the court to set aside the said conveyance to Joe Pizzo and Rose Pizzo on the ground that the conveyance was without consideration and in fraud of creditors. Defendant Don F. Pizzo filed a

general denial as to all of the counts of the amended petition, while the other defendants filed an answer to count five admitting the conveyance to them, but denying other allegations.

On November 20, 1954, the record shows: "Trial by court on counts 1, 2 and 5 of plaintiff's petition." Thereafter, the court filed a document showing its findings on each of said counts. Each paragraph disposing of a count recites that the "Finding, Judgment and Decree" is in favor of plaintiff on the particular count and against the defendants and it sets forth the relief granted, all in accordance with the relief asked in counts one, two and five of the amended petition. Immediately thereafter the record shows a "Memorandum of Court" setting out the court's finding of particular facts, the court's theory of the case and the authorities relied upon. On December 27, 1954, an order was entered of record entitled "Decree of Court." The record under this heading shows the court's detailed findings of fact on each of the three counts and the particular relief granted. All of the issues raised by the pleadings in counts one, two and five are fully disposed of in favor of plaintiff and all costs are taxed against the defendants. After motions for new trial were filed and overruled, the defendants filed notice of appeal. For convenience, we shall continue to refer to respondent as plaintiff.

The issue has not been raised by the parties, but it is our duty to determine whether a separate, final appealable judgment has been entered on counts one, two and five of the petition. Hammonds v. Hammonds, 364 Mo. 517, 263 S.W. 2d 348, 350 (4) ; Deeds v. Foster, Mo. Sup., 235 S. W. 2d 262, 265 (1). We think this issue turns entirely upon the construction to be placed upon Supreme Court Rule 3.29, which we shall presently consider.

The right of appeal is purely statutory. Tucker v. Miller, 363 Mo. 820, 253 S.W. 2d 821, 823 (1) ; Stith v. St. Louis Public Service Co., 363 Mo. 442, 251 S.W. 2d 693, 695 (1). Further, Section 512.020 RSMo 1949, permits an appeal "from any final judgment in the case"; that is, from "the final determination of the right of the parties in the action." See Section 511.020 RSMo 1949. While an appeal is authorized by Section 512.020 RSMo 1949, "from any interlocutory judgments in actions of partition which determine the rights of the parties," in the case under consideration the question of plaintiff's right, title and interest in the described property was settled by the determination of the issues raised in counts one and five of the petition, which determined plaintiff's ownership of a one-half interest in the property sought to be partitioned and set aside the purported conveyance thereof.

The general rule is that a judgment to be final and appealable must dispose of all parties and all issues in the case and leave nothing for future determination. Bennett v. Wood, Mo. Sup., 239 S.W. 2d 325, 327 (3) ; State ex rel. Thompson v. Terte, 357 Mo. 229, 207 S.W. 2d 487,

489 (2) ; Deeds v. Foster, supra. In the Deeds case it was said: "The rule applies except for separate final judgments [380] *expressly ordered* under Supreme Court Rule 3.29." (Italics ours). The purpose of the general rule is to prevent the piecemeal presentation of cases on appeal, or in detached portions. Weir v. Brune, 364 Mo. 415, 262 S.W. 2d 597. Further, Section 511.130 RSMo 1949, provides that "only one final judgment shall be given in the action," but this section has been modified by Supreme Court Rule 3.29. And see Sections 507.040, and 507.050 RSMo 1949.

Supreme Court Rule 3.29 provides: "When a separate trial of any claim * * * is *ordered* in any case and *a jury trial thereof is had*, the separate .judgment entered upon the verdict therein shall be deemed a final judgment for the purposes of appeal within the meaning of Section 126 (now Section 512.020 RSMo 1949). *When a separate trial* of any such claim *is had before the court without a jury, the court may order a separate judgment entered which shall be deemed a final judgment for the purposes of appeal* within the meaning of Section 126; or the court may enter a separate interlocutory judgment and order it held in abeyance until other claims, counterclaims or third party claims in the case are determined, in which event appeal shall not lie until a complete judgment disposing of all claims is entered. In case a separate final judgment is entered the court may stay its enforcement until other or all final judgments in the cause are entered and may prescribe such conditions as are necessary to secure and protect the relative rights of all parties." (Italics ours).

With regard to *non-jury trials,* the rule clearly gives the court *discretion to order a separate judgment* on the separate non-jury trial of a claim and provides such separate judgment shall be deemed a final judgment for the purposes of appeal. Carr, Missouri Civil Procedure, Vol. II, Sec. 860, p. 47. The discretion to "order a separate judgment" is a discretion to be exercised by the trial court and not by the appellate court. It is of vital importance to litigants and their counsel for the purpose of appeal to be able to know when a final, appealable separate judgment has been entered. See Supreme Court Rule 3.24. Its importance to litigants is well illustrated by the decision in Readenour v. Motors Insurance Corporation, Mo. App., 287 S.W. 2d 135, decided by the Kansas City Court of Appeals on January 9, 1956, holding that the trial court's decision of the separate trial of an equity count of a petition requesting reformation of an insurance contract (relief which was important to the trial of the second count at law to recover on the policy), was a separate judgment, final and appealable and, therefore, not reviewable on a subsequent appeal after final judgment on the second count. On application of defendant-appellant, that case has been removed to this court for final determination. And see Winn v. Farmers Mutual Fire

Insurance Co., 83 Mo. App. 123. The mere fact that the circumstances in a particular case are such that the court may find it necessary to separately try the issues of a particular count in equity, or in a jury waived case at law, does not mean that the disposition made by the court of the issues of that count is immediately intended as a final appealable separate judgment within the meaning of the Rule 3.29, however, we are here only concerned with the particular judgment entered in this case on counts one, two and five.

In Amitin v. Izard, Mo. App., 252 S.W. 2d 635, 640(1), the court considered an order for a separate trial to be an order for a separate final judgment. The opinion in Weir v. Brune, Mo. Sup., 256 S.W. 2d 810, 811, lends credence to this view. And see Lightfoot v. Jennings, 363 Mo. 878, 254 S.W. 2d 596, and Harper v. St. Joseph Lead Co., 361 Mo. 129, 233 S.W. 2d 835. In the case of Mothershead v. Milfeld, 361 Mo. 704, 236 S.W. 2d 343, 344(1), there was a stipulation and special circumstances attending a separate non-jury trial and a separate judgment on the first count of a petition from which this court reached the [381] conclusion that the judgment as to title, which was the underlying issue in the other untried counts, was intended to finally adjudicate that issue and it was considered a separate, final judgment for the purpose of appeal. And see Weir v. Brune, supra, 262 S.W. 2d 597, 599(3), wherein it is stated: "Broadly, our rule 3.29 *authorizes* the entry of a final judgment, in an appealable sense under Section 512.020, *when a separate trial* of any 'claim, counterclaim, or third party claim' *is ordered in any case.*" (Italics ours). Apparently, it is not possible to reconcile these divergent holdings and general statements on the theory that some are in jury cases and others non-jury cases. However, in this case we are seeking to determine whether the authority to order a separate judgment has been exercised in this non-jury case, where the court did not designate the judgment a separate judgment, nor indicate that the judgment was intended either as final or interlocutory.

Should the judgment disposing of all of the issues presented by counts one, two and five be deemed final and appealable, prior to the disposition of the other counts of the petition, which counts purport to state independent causes of action at law? This is a multiple cause of action case. It is apparent that the disposition of counts three and four is not dependent in any respect upon the outcome of or final disposition of counts one, two and five, yet counts three and four of the petition do represent further controversies between the same plaintiff and defendant Don F. Pizzo, all of which controversies are related as hereinafter stated.

In this case, as stated, there was *no express order* for a *separate judgment* on counts one, two and five and, while these counts were in fact tried separately from the other counts, such trial clearly resulted because counts one and five asked affirmative relief which only a

1230

court of equity could grant and the decision on count two depended upon the outcome of counts one and five. However, the court did enter a separate judgment disposing of all the issues presented by counts one, two and five and only plaintiff and defendant Don F. Pizzo are interested in the remaining counts.

Since the plaintiff's right to relief on count two was dependent upon her obtaining the relief prayed for in counts one and five, considering the record as a whole, it is apparent that only one judgment was intended to dispose of these three counts and that such judgment was intended as a judgment separate and apart from any relief that might thereafter be given on the two remaining counts. The record indicates the exercise of discretion in favor of a separate judgment and nothing appears to indicate an intention that the judgment should be interlocutory or that its enforcement should be stayed, "until other or all final judgments in the cause are entered." In such situation we think the separate judgment entered on these counts should be construed as an *order for a separate judgment* within the meaning of Supreme Court Rule 3.29 and, accordingly, it must "be deemed a final judgment for the purposes of appeal within the meaning of" Section 512.020 RSMo 1949. If the trial court wanted this judgment to be interlocutory or held in abeyance, or its enforcement stayed, it should have so provided.

■ We are next confronted by respondent's motion to dismiss the appeal for alleged violations of Supreme Court Rule 1.08 in that appellants' statement is brief and inadequate and there are few references to the transcript of the evidence. The statement is subject to severe criticism in the respects mentioned, but in view of the conclusions we have reached we will rule the case on its merits.

We have jurisdiction of the appeal because title to real estate is directly involved. The decree sets aside a conveyance and sustains (on the theory of a resulting trust) plaintiff's claim to ownership [382] of a one-half interest in the described real estate. Article V, Section 3, Constitution of Missouri 1945.

Since plaintiff relies upon her personal relationship with defendant Don F. Pizzo (hereinafter referred to as Don) as corroborative of her testimony and the defendants rely upon the same facts as materially affecting plaintiff's credibility and the weight and value of her testimony, we shall state these facts in some detail.

Plaintiff was fifty-one years of age at the time of the trial and Don was thirty-seven. They had been married in January 1938 and divorced in July 1947. Thereafter, in 1948, they began having dates and Don asked plaintiff to re-marry him and they were engaged. He proposed that they go to Louisville, Kentucky for the purpose of getting married and to see the Kentucky Derby. Plaintiff agreed and Don told plaintiff's daughter by a prior marriage that they were going to Kentucky to get married. When plaintiff and Don reached Louis-

ville, they registered at the hotel as man and wife and resumed marital relations. The following morning Don refused to go ahead with the marriage, but he agreed to do so later on. These promises were to be repeated at various times during the next five years. The parties remained in Kentucky a few days and then returned to St. Louis and by agreement announced to their friends and relatives that they had re-married while in Kentucky. Plaintiff claimed that she was tricked into going to Kentucky, but in any event the parties continued to reside together as husband and wife after that time, except for brief intervals, until September 1953, when they were finally separated after quarrelling over Don's attentions to another woman, whom he subsequently married.

Don testified that the parties had resumed sexual relations within six weeks after their divorce; that he had never at any time promised to re-marry the plaintiff, but that she had requested re-marriage on many occasions. He admitted that they attended the Kentucky Derby together and, on their return, agreed to and did announce to their friends and relatives that they had been married; and that, thereafter, they continued to live together as man and wife, except for brief separations, until their final separation in September 1953. He denied that he told plaintiff's daughter they were going to Kentucky to be married. After their final separation, Don wrote plaintiff a letter wherein he told her he loved her and blamed their difficulties on his ill health. The letter was signed "Your Husband."

From August 1950 to January 1952, Don was in the U.S. Navy. During this time Don made a claim for dependents and plaintiff received an allotment from the government. Don was stationed in Florida and plaintiff followed him there and they lived together in the same quarters. Don, however, took the allotment checks and sent them to St. Louis where they were deposited in his personal account in the Baden bank. Don admitted making the claim for dependents and securing an allotment from the government during this period. In Florida, plaintiff had a "pass to and from Naval Station, Green Cove Springs, Florida," as Don's wife.

On one occasion during 1949, plaintiff saw Don in company with a young lady at a tavern. When plaintiff subsequently protested, she was beaten up and kicked on the ankles and the parties separated for a time. Don, however, denied that he "beat her up." Thereafter, early in 1950, Don contacted plaintiff and offered to buy a house and furnish it, if plaintiff would come back to him. He agreed that he would marry her, "after we get the house." He told her, however, that he would have to have some money for a down payment. She said she knew he didn't have any money and so she agreed to furnish the money she had gotten for their furniture after the prior divorce. He was going to buy the house for her and take title as husband and wife. She didn't know that it couldn't be done when they were [383]

not married. However, the parties selected a lot in a new subdivision in St. Louis County. The price for the house, when completed, was to be $12,800. Don admitted that plaintiff accompanied him when the property was finally selected, and that both went to the real estate office when the contract for the house was signed, but he denied that he told plaintiff he was buying the property for her. He said she went along for the ride and he claimed that she knew he was buying the house "alone." The real estate company issued a receipt, dated January 8, 1950, in part as follows: "Received of Don F. Pizzo and Connie, his wife, Twenty-five and no/100 Dollars ($25.00). As earnest money deposit and part purchase money for the purchase of property located at 9246 Astoria, Lot 102 Hathaway Hills #2. An additional $975.00 earnest money is to be paid on or before 1-22-50 at which time sales contract, etc. are to be executed * * *." This receipt further shows the husband's full name, residence, place of employment and his income per month and also his wife's (Connie's) place of employment and income. The receipt shows purchase price $12,-800.00 and it was signed by the real estate company and Don Pizzo.

Plaintiff testified that, while she was in the real estate office, she signed a couple of papers for the house, but she did not read them, and, after that, she didn't know what happened. She said, however, that Don decided that another house in the subdivision was more desirable and she viewed the house and agreed to the exchange (note the amended receipt). She said they "switched" the down payment to the second house. Later, Don told her she was not to sign the papers, she did not know why.

It will be noted that the additional payment was to be made and another contract signed on or before January 22, 1950. On January 17, 1950, plaintiff withdrew $1010.71 from her account in the Bank of St. Louis. She testified that, within two days thereafter, she gave this money to Don for the down payment on the property which they had selected. On January 20, 1950, the real estate company issued a receipt to Don for $975.00, "as earnest money" on the property in question, located at 9246 Astoria Hills. However, the sale contract for the property, like the receipt for the $25.00, was signed by Don F. Pizzo alone. On the sales contract the real estate company acknowledged the receipt of $1000 "as earnest money on account of above sale January 16, 1950." The contract further provided for a total cash payment of $3800, with a $9000, 20 year, G. I. loan. On the "Earnest money contract Information" sheet, dated 1-16-1950, the words "and Connie Pizzo, wife," have been stricken with a pen. There was evidence the contract date was incorrect. All subsequent papers connected with the purchase of the particular property appear to have been signed by Don F. Pizzo, and the title deed was issued to him. Don testified that he told the real estate salesman he was single. He said he first paid $1000 on the property and, later, $2905.50

to complete the down payment; and that he, subsequently discharged the $9000 loan on the property. There was evidence that the $2905.50 was paid to the real estate company on April 14, 1950, when the 20 year loan took effect, and there was evidence showing the payment was made April 19, 1950. Plaintiff said Don told her he borrowed the $2905.50 from his mother. As to when plaintiff gave Don "that $1000," Don said "it was around the period we were buying the house." He didn't know whether it was $1000, he guessed it "was part" of the $1000 he paid to the real estate company on January 20, 1950. He was also "pretty sure," he had used part of the money from the sale of a lot in Normandy Park. The latter lot was acquired by Don and plaintiff, as husband and wife, in 1945 before the divorce, and it was later sold by them on April 18, 1950 after the divorce, and they executed and acknowledged the deed as husband and wife. The Normandy Park lot was sold for $1500.

[384] Plaintiff first knew that Don had taken the title to the property in his own name when the deed was mailed to the house several months later. She protested, but there was little she could then do about the matter, as they were living together and their friends and relatives believed they were married. She did not loan Don any money. She gave it to him to put on the house they were buying. She never asked to get it back and didn't expect to get it back. Don also testified that she had not asked for her money back. The parties later purchased furniture for the house and the bill of sale for the furniture was made to Don and he made the monthly payments thereon. She didn't question it. Plaintiff left Don and moved out of the house after "the other woman in the case" telephoned her, told her she didn't own the house and wasn't married to Don and ordered her to get out.

Don testified that he transferred the house and lot to his uncle and aunt in April 1954 upon the down payment of $2500 in cash in big bills, tens, twenties and fifties, some hundreds, and that he kept the money in a drawer behind his clothes at his aunt's house. The balance was paid by note and deed of trust on which payments were being made to him. The total consideration for the sale does not appear from the record presented here, but the deed shows U.S. Revenue Stamps for $14.85. Rose Pizzo said they paid $2500 in cash as a down payment on the property; that the matter was handled by the real estate company; and that the balance was being paid by check at $71.50 per month. Mrs. Pizzo admitted she had a checking account, but she made the down payment in cash, she had the money at home. Joe Pizzo testified to signing the note and deed of trust for the balance of the purchase price of the house. As to the checks received by Don from his aunt on the note, Don said he gave them to his girl friend to deposit in the bank in her name, but they both had money in the

account. He stated that he deposited money in this account after he sold the house to his uncle and aunt.

The court found that plaintiff and Don had been married and divorced; that Don had subsequently proposed re-marriage; that on reaching Louisville he had refused to go through with the marriage, but had promised to marry plaintiff later on; that the parties returned and said they had been married and they had lived together; that, after a subsequent separation, Don requested plaintiff to return to him and promised to buy a house "for them"; that plaintiff contributed approximately $1000 toward the purchase of the selected property, upon Don's promise that title would be taken in both their names; that after obtaining plaintiff's money, "defendant, Don Pizzo, without plaintiff's knowledge or consent decided to take title to the property in his own name alone, which he accomplished very easily because of plaintiff's lack of knowledge of such transactions"; that a trust resulted in plaintiff's favor and plaintiff became the equitable owner of a one-half interest in the property described in plaintiff's said petition; that, on learning that title had not been taken as agreed, plaintiff protested, but the parties continued to live together; that, after the present action was filed, Don conveyed the real estate to Joe Pizzo and Rose Pizzo, his wife; that said grantees were not innocent purchasers for value; that the conveyance was in fraud of plaintiff's rights and to defeat her claim; that the grantees had constructive knowledge of plaintiff's claim; that the grantees took the property "subject to plaintiff's equitable interest in the property which was created as a resulting trust in her favor"; that the grantees were the owners of a one-half interest in the property subject to an unpaid encumbrance held by Don; and that plaintiff was the owner of the other one-half interest free and clear from the encumbrance. The decree contains the necessary provisions to grant the relief prayed; it divests Joe Pizzo and Rose Pizzo of a one-half interest in the property and declares such one-half interest to be vested in plaintiff, it determines the title to the remaining half interest and orders the property [385] sold for the purpose of making partition.

Appellants contend that plaintiff failed to sustain her burden of proof to establish "a resulting trust by evidence so clear, cogent and convincing as to remove any reasonable doubt as to its existence"; and that the judgment is "contrary to the weight of the evidence and the law." Appellants also point out that, "where transfer of property is made to one person and part of the purchase price is paid by another a resulting trust arises in favor of the person by whom such payment is made in such proportion as the part paid by him bears to the total purchase price, unless he manifest contrary intention," citing Shelby v. Shelby, 357 Mo. 557, 209 S.W. 2d 896, 899.

In a case such as this we are not bound by the chancellor's findings, but must review the evidence de novo and reach our own

conclusions as to its weight and value. However, we usually defer to the chancellor's findings when the case turns upon the credibility, weight and value of the oral testimony of witnesses who have appeared personally before him, unless we are satisfied that the findings should have been to the contrary. Suhre v. Busch, 343 Mo. 679, 123 S.W. 2d 8, 19; Beach v. Beach, Mo. Sup., 207 S.W. 2d 481, 486.

Appellants insist that in this case, "where each party categorically denies the statements of the other," we should consider the actions of the parties. Appellants refer particularly to plaintiff's personal conduct in living with a man to whom she was not married. Appellants say that no date was set for the marriage and that plaintiff may have been unlearned in real estate transactions, but she knew a ceremony was necessary "to pronounce individuals man and wife." Appellants insist that her conduct "belies her oral testimony that appellant (Don) agreed at any time to place property in her name." Appellants further point to the fact that Don made the $25.00 deposit and that the final sales contract, dated January 16, 1950, shows Don Pizzo, single and unmarried, as purchaser. Appellants contend that plaintiff's purpose in contributing to the down payment was to reduce the amount of the monthly payments and that it had no reference to any agreement as to title.

The trial chancellor saw and heard the witnesses and was in a far better position to determine the credibility, weight and value of their personal testimony than we are from a review of the cold record, and deference should be given to his views. Carr v. Carroll, 352 Mo. 301, 178 S.W. 2d 437. When we consider the long association of the principal parties, we can only say that such association appears to have been upon a mutually agreeable basis, although plaintiff did obtain the divorce and Don's letter to plaintiff after their final separation indicates his desire for her return. The court in its decree reviewed the evidence and found that it clearly corroborated the plaintiff's claim that she contributed to the purchase of the property upon the agreement that it would be owned by both parties. The court's conclusion was that "the situation clearly showed that a resulting trust was created when the defendant took (title to) the property in his own name and that the plaintiff is entitled under the law to a half interest in the property * * *."

It is well settled that "a resulting trust must arise, if at all, at the instant the deed is taken. Unless the transaction is such that the moment the title passes the trust results from the transaction itself, then no trust results. It cannot be created by subsequent occurrences." Bender v. Bender, 281 Mo. 473, 220 S.W. 929, 930, and authorities there cited; Hiatt v. Hiatt, Mo. Sup., 168 S.W. 2d 1087; Lehr v. Moll, Mo. Sup., 247 S.W. 2d 686; 65 C.J. 371, Trusts, Sec. 145.

It is further well settled that to establish a resulting trust an extraordinary degree of proof is required; and that vague or shadowy

evidence or a preponderance of the evidence is not sufficient. The evidence [386] must be so unquestionable in its character, so clear, cogent and convincing that no reasonable doubt can be entertained as to its truth and the existence of the trust. Aronson v. Spitcaufsky, Mo. Sup., 260 S.W. 2d 548, 549; Mays v. Jackson, 346 Mo. 1224, 145 S.W. 2d 392, 398.

We need not again review the detailed facts shown by this record. It is conceded that the parties had separated and in arranging to resume living together they selected a lot upon which a new house was being constructed. They were both present when the purchase was initiated. Don joined in signing the $25.00 receipt from the real estate company which named both parties as having made the payment and showing their respective employments and income. This document corroborates the plaintiff that both were buying the property. It is true that the prior oral agreement rests upon plaintiff's testimony and only her testimony supports her statement that she signed several other papers in the real estate office and that Don told her she did not need to sign further. However, it is clear that the preliminary agreement to purchase was shifted from one lot to another and that Don handled and signed all subsequent papers. It appears to be conceded that plaintiff furnished a portion, if not all, of the $975 down payment on the property and the documentary evidence and admitted facts fully corroborate her in that regard. Considered as a whole, we think the record clearly shows that plaintiff's contribution to the purchase price, prior to the execution and delivery of the deed to Don, was made upon the understanding and agreement that both parties were to own the property together as husband and wife; and that, without plaintiff's prior knowledge or consent, Don took title in his own name. In such situation, and in view of the relationship of the parties, a trust resulted and plaintiff became the equitable owner of a one-half interest in the property and we find no subsequent waiver by plaintiff, nor any consent to Don's sole ownership of the property.

Appellants, however, say that "surely a court of equity is not going to award (sic) the respondent for her conduct by giving her one-half of a piece of property, which was paid for by the appellant in the sum of $12,800.00, rather than give her her portion as that part applies to the purchase price."

It is immaterial to any of the pleaded issues in this case that Don has paid the balance of the purchase price of the property. The manifest intention of the parties, as we have held, was that title to the property was to be taken in the names of both parties, as husband and wife. Plaintiff's contribution was upon that basis, but, after obtaining plaintiff's money and applying it to the down payment on the purchase price, Don took title in his own name. In such situation, Shelby v. Shelby, supra, 209 S.W. 2d 896, and Baumgartner v. Guess-

feld, 38 Mo. 36, the cases relied upon, do not control. Plaintiff's equitable title to a one-half interest in the property by way of a resulting trust was unaffected by Don's payment of the balance of the purchase price.

The third and final assignment under points and authorities is that, "The court failed to make any finding as to the personal property involved in this suit." No authorities are cited, no argument is made. Nothing appears in appellants' brief except the mere statement of a fact. The assignment does not conform to Supreme Court Rule 1.08(a)(3) and (d). However, we think the record sufficiently shows that plaintiff abandoned the issue of a resulting trust in the furniture in the course of the trial. Plaintiff's payment was intended to be applied on the purchase price of the real estate. While both parties purchased the furniture, the bill of sale was made to Don and he paid for it.

Appellants do not complain of the decree in any other respects. The judgment is affirmed. All concur, except *Westhues, J.,* concurs in result in separate opinion filed.

WESTHUES, J. (concurring).—I concur in the result reached in this case. However, I do not think it was necessary to discuss the question of whether the judgment entered was final and appealable.

Counts 1, 2, and 5 constituted a distinct and separate cause of action having no connection with issues presented in counts 3 and 4. In fact, the parties are not the same. The court, as the opinion states, tried the case made up of counts 1, 2, and 5 separately. That was proper procedure. The court made a final disposition of the case and nothing was left to be done except to partition the property. The result of a trial on either count 3 or on count 4 could in no way affect the judgment appealed from in this case.

When the trial court tried this case separately, the result was a complete severance of it from the other cases which were joined in the same petition. I do not believe that Supreme Court Rule 3.29 has any application to this kind of a situation. That rule, which provides that a court may enter a separate interlocutory judgment and order it held in abeyance until the other claim, counterclaims, or third party claims in the case are determined, has application to those claims of which the resulting judgment may affect the judgment held in abeyance. If the rule were applied to a situation as now before us and the judgment were held in abeyance awaiting the outcome of the two other cases, the result would be utter confusion. Suppose that were done and a final judgment entered after the trial of the other cases, that is, counts 3 and 4, and suppose plaintiff obtained a judgment in each for $2,000, appellate jurisdiction of which would be in the Court of Appeals. Would those two cases ride on the coattail of the suit to try title to this court which has appellate jurisdiction of title

1238

cases? Would not three distinct and separate cases be presented on one appeal? I do not find any case previously decided that even suggests that Rule 3.29 has any application to this kind of a situation. In all the cases where the question was discussed, the judgment entered on one count had some connection with the counts not tried. Lightfoot v. Jennings, 363 Mo. 878, 254 S.W.(2d) 596, l.c. 597 (1-4); Deeds v. Foster, Mo., 235 S.W.(2d) 262; Bennett v. Wood, Mo., 239 S.W.(2d) 325, l.c. 327 (1, 2); Hammonds v. Hammonds, 364 Mo. 517, 263 S.W.(2d) 348, l.c. 350 (2).

It is my opinion that where two or more separate and distinct causes of action are joined in one petition and where, as in this case, the one cannot have any effect on the judgment in the other, then a separate trial of one case, as ordered by the trial court, separates that case from the others for all purposes including appeal. It is my opinion that our Rule 3.29 would not have authorized the trial court to have entered an order holding the judgment appealed from in abeyance.

I, therefore, concur in the result.